### ERWIN ET ALS. *vs.* ORILLION.

APPEAL FROM THE COURT OF THE FOURTH JUDICIAL DISTRICT, THE JUDGE OF THE SECOND PRESIDING.

The articles 586 and 896, of the *Code of Practice,* are not absolutely contradictory, and are to be construed so as to give full effect to both.

The certificate of the clerk alone that the record contains a copy of all the documents on file, a transcript of all the proceedings had, and all the testimony adduced, authorises the Supreme Court to examine a case on the merits.

*It seems* that the appointment of an administrator is necessary in every case, where a succession is accepted by heirs who are all of full age.

That interpretation of a law is inadmissible, which provides another admintstration for an estate to which one is already given by law.

Article 327, of the *Louisiana Code*, does not relate to a succession of which a tutor has already the administration by virtue of his tutorship. It refers to estates which may descend to his wards during their minority.

The tutor can under authority of general administration, collect and sue for, if necessary to such collection, debts due to the succession.

When an estate is accepted, with the benefit of inventory, and some of the heirs are of full age, while others are minors, it should be left to the administration of the tutor until partition. In suits to recover debts due to the succession, the heirs of full age and the tutor of the minor heirs should concur.

Where a mortgage is reserved upon the undivided moiety of a certain tract of land, a subsequent partition does not alter the nature and effects of the contract of mortgage.

This suit was brought to obtain the seizure and sale of certain property, by virtue of a claim of mortgage for the payment of the sum of five thousand dollars. The plaintiffs were Lavinia Erwin, widow of Joseph Erwin, deceased, Eliza Wilson, Isaac Erwin, Leodocia Erwin, wife of William B. Robertson, and by him assisted, Charles H. Dickinson, Thomas R. Erwin, Lavinia Erwin, wife of Warren Acorn, Lavinia Erwin, as tutrix of the minor children of John Erwin, deceased, and as administratrix of Joseph Erwin, an insane and interdicted person, all of the parish of Iberville, Nancy Erwin, wife of Andrew Heyncs, and by him assisted, John B. Craighead, natural guardian and tutor of Joseph E. Craighead and Thomas B. Craighead, of Davidson county, state of Tennessee, heirs and representatives of the late Joseph Erwin, and all accepting under the benefit of inventory.

The plaintiffs allege that their ancestor, on the 24th day of January, 1826, was seized, of a tract of land situate on the west or south side of the bayou Grosse Tête, in said parish,

being numbers 30, 31, 32 and 33, of the lots laid out and sold by the United States, on the said bayou, on the south or west side thereof, agreeably to the limits established in the surveys made by the direction of the government of the United States, said lots containing six hundred and fifty-one acres and eighty-one hundredths of an acre, together with the buildings thereon, and the bridge constructed across said bayou, on the front thereof. That the said Joseph Erwin then sold to Joseph Orillion, one undivided moity of the tract, buildings and other appurtenances, for the sum of five thousand dollars for the land, payable at certain specified periods. Orillion was also to pay one half of the value of the bridge, and the buildings to be estimated by certain referees.

On the 24th day of September 1827, Joseph Erwin sold to Don Louis Rosemond Orillion, the remaining undivided half of the tract of land, together with an equal and undivided half of all the buildings on the land, and the bridge.

On the 12th day of March, 1829, Joseph Orillion and Don Louis Rosemond Orillion, by public act, made a *partition* of the property.

Joseph Orillion excepted to the petition, for want of proper parties plaintiffs on the following grounds:

First, Because the plaintiffs do not sue, as heirs, pure and simple, of Joseph Erwin.

Second, Because they do not, nor does any one of them sue as administrators or administrator, of Joseph Erwin's estate.

Third, Because the estate of said Joseph Erwin is not properly represented in this suit.

Fourth, Because the said estate is accepted under the benefit of an inventory, and consequently the same must be administered by an administrator, legally authorised and appointed, and by such administrator only this suit can be brought.

Fifth, Because the plaintiffs do not show any proper and legal quality, capacity and authorisation, to maintain and support this suit.

These exceptions were overruled. He then pleaded the general denial, and a special denial of the alleged heirship of the plaintiffs. He admitted his purchase, and that of Rosemond Orillion from Joseph Erwin, and the partition between him and Rosemond Orillion, as alleged. He averred that by an agreement entered into with Erwin, he was entitled to keep the land as long as he pleased, on the payment of six per cent. interest on the unpaid purchase money. He pleaded payment to the widow of one thousand dollars.

The plaintiffs had judgment, and the defendant appealed.

The judge *a quo* gave no certificate. That of the clerk was in the following words.

"I, John A. Hause, clerk of the Fourth District Court, in and for the parish of Iberville, do certify the foregoing eleven pages, to contain a true and correct copy of all the documents on file, transcript of all the proceedings had, and all the testimony adduced in the case," &c.

The appeal was made returnable on the first Monday in July last. In January last the assignment of errors was filed.

*Labauve,* for defendant and appellant.

1. The court below erred in overruling the exception of defendant, made to the plaintiffs' right of action, as beneficiary heirs of Joseph Erwin.

2. The judge below erred in not allowing to the defendant, the credit of one thousand dollars, pleaded in payment and proved by an authentic document, made part of the answer.

3. The court erred in decreeing a mortgage on defendant's land *in toto*, the pleadings showing clearly, that in law plaintiffs had a mortgage on the undivided half only, and not on the whole.

4. The plaintiffs, as heirs under the benefit of an inventory, had no right to bring this suit, and the exceptions by defendant made to such right, were well taken and improperly overruled. *Civil Code, arts.* 1034, 5, 1041, 2.

5. There is no evidence of Joseph Erwin's death, nor that the plaintiffs are heirs in the manner they style themselves.

6. The judge below erred in not allowing credit to defendant, for one thousand dollars, proved to be received by Lavinia Erwin, one of the plaintiffs. The declaration or acknowledgment of the counsel, on the back of the judgment within, does not correct the error and relieve the defendant, the counsel after the signing of the judgment, had no right to do so, and did not bind his clients thereby.

7. Defendant had good reason to fear a disturbance, and the court should have decreed the plaintiffs to give security, as required by law, in such a case.

8. The court below erred in decreeing a mortgage on defendant's land *in toto.* The plaintiffs have a mortgage on the undivided half only, and the other half is clear and free of all mortgage, as regards the plaintiffs. The partition made between defendant and Rosemond, did not as a matter of course, fix the mortgage on the land assigned to defendant, and release the one assigned to Rosemond. The partition was a matter of agreement, which can bind but the parties thereto. *Civil Code, art.* 1883. From this principle it is contended, that the mortgage was not changed or altered in any shape or form, and that it stood as before on the undivided half.

MATHEWS, J., delivered the opinion of the court.

It is moved on the part of the appellee, to dismiss this appeal, on the grounds that there is no statement of facts, or any thing equivalent, and that an assignment of errors of law, apparent on the record, was not made and filed in due time.

An assignment of errors was not made in the manner directed by the *Code of Practice, see art.* 897; for none was filed within the time limited by that article. Consequently, if there be no statement of facts, nor certificate of the judge or clerk of the court below, as required by law, the appeal

27

should be dismissed. In the present instance, a statement of facts, properly so called, is out of the question; it is not pretended that any was made, in either of the modes prescribed, and the record contains no certificate of the judge *a quo*, in relation to the facts of the case, in pursuance of the 586th article of the *Code of Practice.* This article seems to require a certificate of the judge, when the testimony produced in a cause has been taken in writing, declaring that the record contains all the evidence adduced by the parties. But the article 896, (by implication) gives power and authority to the clerk of the lower court, to certify the record as containing all the testimony adduced. The article immediately preceeding, (very properly) denies to the Supreme Court the exercise of its jurisdiction, except so far as it may have knowledge of the matters argued or contested below.

The object of an appeal being to correct the errors of the inferior tribunals, both in relation to the law and facts of a case, an attempt by the appellate court, to reverse the judgment rendered in the first instance, by an examination of the entire cause, without a moral certainty that all the matters contested upon were before it, would be vain and absurd. It seems, therefore, to have been the intention of the legislature, in the various acts passed, relative to the manner of bringing appeals, to facilitate them as far as might be consistent with the certainty of all the matters in litigation, being fairly and fully exhibited to the Supreme Court. The laws passed on this subject have been somewhat multifarious, (and as is too apt to the case, without great precaution on the part of the legislature, when many laws are enacted, touching the same subject matter) they have the appearance in some degree, of confusion and contradiction.

At the organization of the Supreme Court, by the act of 1813, it is believed that only one mode was pointed out for bringing a cause fully before the appellate tribunal, which was by a statement of facts, made out by the parties, and in the event of their disagreement by the judge of the lower court. By a subsequent act, either party might require the testimony adduced to be taken in writing, to serve as a

statement of facts on the appeal. Their was also another law, authorising the judge to certify the record, as contain-ing all the facts when the entire evidence consisted of written documents. Thus the law on this subject stood, until the adoption of the Code of Practice, and in it many of the former rules have been retained. The decision of the present case, depends, however, mainly on an interpretation of the various articles of this Code, which treat of the manner of bringing up appeals, particularly those relating to the direct modes in which the faults of a cause are to be made known to the appellate court. There is an apparent discrepancy between the articles 586 and 896. The former seems to require a certificate of the judge to verify the record as containing all the evidence adduced in a suit, whilst the latter impliedly gives the same force and effect to a certificate of the clerk. These laws are to operate *in pari materia*; and according to one of the rules of interpretation, effect must be given to both, unless palpable absurdity would result from such interpretation, or the laws themselves be positively contradictory, in which event the first would be abrogated by the last, according to the maxim that *Leges posteriores priores contrarias abrogant.* But in the present instance, these articles of the code are not absolutely contradictory in their provisions, nor would any gross absurdity be the consequence of considering them both in force; to give full effect to both, seems to us to be in accordance with the intention of the legislature, to facilitate the re-examination of causes in the Supreme Court, so far as may be consistent with proper certainty in transmitting the facts.

*The articles 586 and 896, of the Code of Practice, are not absolutely contradictory, and are to be construed so as to give full effect to both*

In the case now under consideration, we have the certificate of the clerk, that the record contains a copy of all the documents on file, a transcript of all the proceedings had, and all the testimony adduced, &c., which in our opinion renders it necessary for us to examine the cause on its merits.

*The certificate of the clerk alone, that the record contains a copy of all the documents on file, a transcript of all the proceedings had, and all the testimony adduced, authorises the Supreme Court to examine a case on the merits*

The suit is brought by the widow and heirs of Joseph Erwin, against the defendant, to recover from him the price of one half of an undivided tract of land, sold by their

ancestor. The widow sues as tutor for some of her children, who are stated to be minors, the other heirs appear to be fairly represented in court, and all accepted the inheritance of their father under the benefit of an inventory. The plaintiffs obtained judgment in the Court below, from which the defendant appealed.

The answer does not deny the capacity of the plaintiffs as heirs, but an exception is pleaded to their right to prosecute the action in its present form. The succession having been accepted with the benefit of an inventory, the defendant contends, that it cannot be legally administered, unless by an administrator appointed for that purpose, in pursuance of certain provisions of the *Louisiana Code*, found in chapter 4, section 3, relating to the benefit of an inventory and the delays for deliberating. The articles which treat of the appointment of an administrator, are from 1034 to 1040 inclusive. They seem to require the appointment of an administrator in every case where a succession is accepted with benefit of inventory. That such an officer must be appointed when the heirs are of full age, under every circumstance, without regard to the manner in which the inheritance is thrown on them, is most probably true. The duties and responsibilities imposed by law on an officer of this kind, are similar to those of curators of vacant estates; so also are his powers. But in cases requiring the appointment of tutors, we are of opinion that a just interpretation of the articles of the Code under consideration, will lead to a different result. A tutor duly appointed, or one on which the office devolves by the operation of law, represents the minors under his care in all civil acts, and has the administration of their estates. *See La. Code, art.* 327. Now any other article of the Code which provides another administration for an estate to which one is already given by law, necessarily involves inconsistency, and would lead to confusion and useless expense. An interpretation of laws producing such consequences, would imply a most palpable absurdity in the laws themselves, or want of wisdom in the interpretation. The apparent incompatibility between the article 1037th of

*It seems that the appointment of an administrator is necessary in every case, where a succession is accepted by heirs who are all of full age.*

*The interpretation of a law is inadmissible, which provides another administration for an estate to which one is already given by law.*

EASTERN DIS.
February, 1834.

ERWIN ET ALS.
vs.
ORILLION.

the Code and that last cited, we think admits of reconciliation in a way to give effect to both. The article last cited provides, that "if all the beneficiary heirs be minors, then tutors or curators can claim the preference for the administration," &c. This provision of law certainly does not relate to a succession of which a tutor has already the administration, by virtue of his tutorship. It must therefore have reference to estates which may descend to his hands during their minority, and ought not to be considered as having any influence on an estate, the administration of which is imposed on him in the legal exercise of his functions as tutor, and such administration he has and must exercise in pursuance of the provisions of the article 327. His right under authority of general administration to collect and sue for, if necessary, to such collection, debts due to the succession cannot be fairly questioned.

*Article 327, of the Louisiana Code, does not relate to a succession of which a tutor has already the administration, by virtue of his tutorship. It refers to estates which may descend to his wards during their minority.*

*The tutor can, under authority of general administration, collect and sue for if necessary to such collection, debts due to the succession.*

A case like the present, when part of the heirs appear to be of full age, and part minors, presents greater difficulty, and seems not to be provided for by law.

An estate accepted under the benefit of an inventory, should be administered as an entire thing for the advantage of creditors and heirs, until partition be made. No one of the heirs who may have attained the age of majority, nor indeed the whole of them, in their capacity of heirs, have a right to the administration of a succession, without authority derived from competent power; and where they are united with co-heirs who are minors, and consequently under the protection of a tutor, it appears to us to be the most reasonable and beneficial course that could be adopted, to leave a succession thus situated to the administration of the tutor until partition. But as the heirs of age are not represented by the tutor in the event of suits to recover debts due to the succession, they should concur in the prosecution of such suits, as has been done in the present case.

*When an estate is accepted, with the benefit of inventory, and some of the heirs are of full age, while others are minors, it should be left to the administration of the tutor until partition. In suits to recover debts due to the succession, the heirs of full age and the tutor of the minor heirs should concur.*

The evidence fully establishes the claim of the plaintiff, and there is no evidence on the record to show that the defendant is in danger of eviction from the land by him purchased, or of disturbance in his possession.

LAW SCHOOL LIBRARY HARVARD

The evidence of the case shows, that the ancestor of the plaintiffs sold the remaining undivided half of the tract of land to Lewis Rosamond Orillion, who thereby became a tenant in common with the defendant of the whole tract; and that the two purchasers holding in this manner, made a partition, by which a specific portion was assigned to the first purchaser, &c. The court below decreed the mortgage reserved on the undivided half sold to the defendant, to bear entirely and exclusively on the portion which had been specifically allotted to him by the partition between the joint tenants. The mortgage was reserved on an undivided half of the whole tract, and could in this manner alone have been enforced had no change taken place on the tenure of the defendant. The change in this respect, which results from the partition above stated, cannot, in our opinion, alter the nature and effects of the contract of mortgage; it affects an undivided moiety; but as the defendant transferred by partition the half of his undivided portion to his co-tenant; as to this part of the tract the latter must be considered as a third person, and in order to enforce the mortgage on it, pursuit should be made as required by law in such cases. We think the court below erred in this part of its judgment. The judgment was rendered for two much; no credit having been given for one thousand dollars paid to Mrs. Erwin, one of the defendants; but as a remittitur was entered for this amount by them, the error might be considered as cured, and would not alone require the judgment to be reversed. The error, however, in relation to the decree of seizure under the mortgage must be corrected.

It is, therefore, ordered, adjudged and decreed, that the judgment of the District Court be reversed and annulled. And it is further ordered, adjudged and decreed, that the plaintiffs and appellees do recover from the defendants and appellants the sum of five thousand dollars, together with interest at the rate of six per cent. per annum on one thousand dollars, from the 1st day of April, 1828; like interest on one thousand dollars from the 1st of April, 1829; same

Where a mortgage is reserved upon the undivided moiety of a certain tract of land, a subsequent partition does not alter the nature and effect of mortgage.

interest on one thousand dollars from the 1st of April, 1830; same interest on one thousand dollars from the 1st of April, 1831; and the same interest on one thousand dollars from the 1st of April, 1832, until the whole sum of five thousand dollars be fully paid off, &c.

And it is further ordered, adjudged, and decreed, that one undivided half of the lots designated as Nos. thirty-two and thirty-three and constituted an undivided half of the entire tract sold by the ancestor of the defendants, to Joseph Orillion and L. R. Orillion, and which lots are now in the possession of the defendant, be seized and sold under the mortgage reserved. Reserving the right of the plaintiff to prosecute their mortgage on one half of lots Nos. 30 and 31, in the possession of L. R. Orillion, or in the hands of any third possessor according to law. It is further ordered, adjudged, and decreed, that the whole amount of this judgment shall be credited by one thousand dollars, to be deducted from the aggregate of principal and interest due at the date of the receipt; say the 20th of September, 1831, and that the appellees pay the cost of this appeal.