**3 So.2d 641**

**KELLEY et al. v. KELLEY et al.**

**No. 35986.**

June 30, 1941.

Rehearing Denied July 18, 1941.

A. J. Roy, of Marksville, Lotterhos & Travis, of Jackson, Miss., and Blanchard, Goldstein, Walker & O'Quin, of Shreveport, for plaintiffs, appellants and appellees.

Philo Coco, of Marksville, for Thomas L. Kelley and another.

Pujo, Hardin & Porter, of Lake Charles, for Associated Royalty Co., Inc.

Ledoux R. Provosty, of Alexandria, and Couvillon & Couvillon, of Marksville, for W. D. Haas, Jr., and others.

McCoy & King, of Lake Charles, for Amerada Petroleum Corporation.

ROGERS, Justice.

This is a suit by seven of the eight children and heirs of Seaborn H. Kelley and Delia Campbell Kelley, to be decreed the owners of a fifteen-sixteenth interest in a tract of land containing 507.35 acres, situated in Sections 17 and 18, Township 2 South, Range 3 East, in the Parish of Avoyelles. The tract of land was acquired by Seaborn H. Kelley during the existence of the matrimonial community between him and his wife, Mrs. Delia Campbell Kelley.

The defendants are the eighth child and heir of Seaborn H. Kelley and Mrs. Delia Campbell Kelley, and his wife and the persons and corporations holding mineral leases or royalty interests on the property.

The gravamen of plaintiffs' complaint is that the succession of Mrs. Delia Campbell Kelley, the mother of plaintiffs and the named defendant, was opened and her heirs were placed in possession of the property; that this closed the succession, and thereafter the heirs committed an act which was, in effect, an acceptance by them of the succession of their father. That notwithstanding these facts, an administration of the Succession of Seaborn H. Kelley and his wife was had, and the property was sold by the administrator to a creditor of Seaborn H. Kelley, and this creditor, in turn, sold the property to the wife of the eighth child and heir, who is also a defendant. That the Court was without jurisdiction to order an administration and sale of the property, which was unnecessary; that the purpose of the proceeding was to defeat plaintiffs' right of inheritance; that plaintiffs were never notified of the administration proceedings; that the property was never advertised and sold at public sale; and that plaintiffs were able and could have easily paid the debts of the succession, if they had been called upon to do so.

The defendants filed exceptions of no cause of action, which were overruled. They then filed answers, pleas of estoppel, and of prescription of two, five, and ten years.

The trial judge rendered a judgment in favor of plaintiffs, decreeing them to be the owners of an undivided one-half interest in the property in dispute, free and

clear of any leases, royalty deeds, or other instruments. From this judgment all the plaintiffs and the principal defendants have appealed.

The property involved in this suit was acquired by Seaborn H. Kelley during his marriage to Mrs. Delia Campbell Kelley, who died on July 9, 1911. Mrs. Kelley left as her only heirs eight children who were born of the marriage. Seven of these children are plaintiffs in this suit and the eighth child, Thomas Levi Kelley, and his wife, Bessie Heath Kelley, are among the defendants.

On July 19, 1912, on a petition filed by Seaborn H. Kelley, in his own behalf, and in behalf of his eight children, five of whom were minors, the judge of the Fourteenth Judicial District Court for the Parish of Avoyelles rendered and signed an ex parte judgment, recognizing Seaborn H. Kelley as the surviving spouse of Mrs. Delia Campbell Kelley and as the owner of one half of the community property, and recognizing the eight children of Mrs. Delia Campbell Kelley to be the owners of the other half of the property, and sending them into possession thereof.

On February 5, 1916, two of the children, Thomas Levi Kelley and Daniel L. Kelley transferred their interest in the property to Seaborn H. Kelley, Jr.

After the death of his wife, Mrs. Delia Campbell Kelley, Seaborn H. Kelley continued to live on and to farm the plantation, which is the tract of land involved in this suit. In 1913, Seaborn H. Kelley married Josephine E. Leggett. No children were born of this marriage. Seaborn H. Kelley died in the early part of January, 1921. On January 15, 1921, the children of Seaborn H. Kelley signed a document setting forth that a certain piece of property in the City of New Orleans was the separate and paraphernal property of Mrs. Josephine Leggett Kelley, and Mrs. Kelley signed an instrument releasing any claim to the succession of her deceased husband, Seaborn H. Kelley. On the same day, seven of the eight children signed another document in which it is stated that, desiring to preserve the estate in its present shape in indivision for six years, they leased it to the defendant, Thomas L. Kelley, for that period of time, at an annual rental of $1,425, to be paid to Wilson A. O'Quin, the husband of one of the plaintiffs who was named manager of the estate, this amount to be applied to make the necessary repairs, to pay the taxes and outstanding debts.

On December 26, 1922, Thomas L. Kelley filed a petition in the Fourteenth Judicial District Court for the Parish of Avoyelles opening the successions of his father, Seaborn H. Kelley, and his mother, Mrs. Delia Campbell Kelley, alleging that the property of the successions was heavily mortgaged and that the matrimonial community was heavily encumbered by debts. An inventory was taken. Thomas L. Kelley was appointed administrator, and on his petition, showing debts, among them a note secured by mortgage and vendor's lien in favor of the Union Bank for $5,000, held by Fred G. Cotton, bearing on the property involved in this suit, an order to sell the property to pay the debts of the succession was issued, and the property

was sold at an administrator's sale on February 19, 1923. Fred G. Cotton was the purchaser at the sale. On February 26, 1923, Cotton sold the property to Mrs. Bessie H. Kelley, wife of Thomas L. Kelley, who had previously obtained a judgment for a separation of property.

Defendants, Thomas L. Kelley and his wife, Mrs. Bessie Heath Kelley, have lived on and farmed the property up to the present time.

On March 7, 1939, at which time the property appeared to have value for mineral development, the brothers and sisters of Thomas L. Kelley, without previous demand upon or notice to him, brought this suit to have the succession proceedings, which had been conducted and closed for more than seventeen years, decreed null, to have the mineral leases and other rights, which had been granted by Bessie Heath Kelley and Thomas L. Kelley, set aside, and to have themselves declared to be the owners of a fifteenth-sixteenth interest in the property, and for judgment against Thomas L. Kelley for the sum of $26,500 as rent for the property. The trial of the case in the court below resulted in the judgment which we have hereinabove described.

The primary question presented for decision in this case is whether the succession proceedings of Seaborn H. Kelley and Mrs. Delia Campbell Kelley, opened upon the petition of the defendant, Thomas L. Kelley, were null. Correlative questions, important only if the first question is answered in the affirmative, are whether the nullities are cured by prescription or estoppel, and whether the rights of the mineral lessees and royalty owners, who acquired on the faith of the records, are precluded thereby.

In order to answer the primary question, it is necessary to determine, first, whether the Succession of Mrs. Delia Campbell Kelley was closed by the ex parte judgment of the Fourteenth Judicial District Court for the Parish of Avoyelles recognizing Seaborn H. Kelley as the surviving spouse and owner of an undivided one-half interest and usufructuary of the other undivided one-half interest in the community property, and the eight children, five of whom were minors, of Mrs. Kelley as the owners of the other undivided one-half interest subject to the usufruct of their father, and, as such, sending them into possession of the property; and, secondly, whether the Succession of Seaborn H. Kelley, whose death occurred after that of his first wife, was accepted unconditionally by his heirs so as to render ineffectual the administration thereof.

First. About one year after the death of his wife, Mrs. Delia Campbell Kelley, Seaborn H. Kelley applied to the district court to be, and he was confirmed as natural tutor of his five minor children. An inventory, with an appraisement, and showing a portion of the community debts, was made of the community property. The legal mortgage required by law was inscribed against the natural tutor's undivided one-half interest in the property. Seaborn H. Kelley followed up the tutorship proceeding by obtaining the ex parte judgment, to which we have referred, recogniz-

ing and putting him and his children in possession in their respective capacities as surviving spouse, usufructuary, and heirs of Mrs. Delia Campbell Kelley. This judgment was rendered and signed on July 19, 1912. As the owner of an undivided one-half interest and as the usufructuary of the other undivided one-half interest, Seaborn H. Kelley continued to manage and operate the property until the date of his death. During the interval elapsing between the deaths of their mother and father, notwithstanding that by his second marriage their father lost his usufruct, the major children at no time demanded from their father possession of their mother's portion of the property, nor did they seek to obtain a partition of the property, being content apparently to permit their father to remain in charge of the property and to liquidate the debts of the community, which were considerable, as well as he was able to do.

[1] There can be no question of the right of Seaborn H. Kelley, as the surviving husband, to an undivided one-half, in full ownership, of the community property and to the usufruct of the undivided one-half of the community property inherited by his children. Kelley, as the father of his minor children, was not only entitled to be appointed their natural tutor, but, under the law, it was his obligation to accept the appointment. Civil Code, Art. 301; Succession of Watt, 111 La. 937, 36 So. 31.

As we have stated, an inventory with an appraisement of the assets of the Succession of Mrs. Delia Campbell Kelley was made. This inventory and appraisement fixed the interests of the minors and the amount of their legal mortgage against the immovable property of their tutor. The inventory was also made a part of the petition of Seaborn H. Kelley and the heirs of Mrs. Delia Campbell Kelley, on which the ex parte judgment, recognizing and putting the heirs in possession of the estate of their deceased mother, was rendered and signed; and the judgment itself refers to the inventory as showing "the estate" left by Mrs. Delia Campbell Kelley.

[2] The record discloses that the community property existing between Seaborn H. Kelley and Mrs. Delia Campbell Kelley was incumbered with considerable debt at the time of the latter's death. The heirs of Mrs. Kelley, in applying to be recognized and put in possession of her estate, did not allege the acceptance of her succession purely, simply, and unconditionally. So far as the minors were concerned, the acceptance of their mother's succession could not be made for them unconditionally. By operation of law, the acceptance could be made for them only with the benefit of inventory. Civ.Code, art. 977; Berry v. Wagner, 151 La. 456, 91 So. 837. From which it clearly appears that the proceeding, in which the heirs of Mrs. Delia Campbell Kelley asked to be recognized and to be put in possession of her estate, was a proceeding for such recognition and possession only with the benefit of inventory, and the judgment rendered in the proceeding so declared and provided.

[3] As the surviving husband, master of the community, usufructuary, and tutor of his minor children, Seaborn H. Kelley

was invested with the right to administer the property of the succession until the minors became of age, the debts were paid, and a partition demanded by the major heirs, if there was a residue, and they were entitled to a settlement of the succession.

More than 100 years ago, it was held by the Supreme Court of Louisiana that "when an estate is accepted, with the benefit of inventory, and some of the heirs are of full age, while others are minors, it should be left to the administration of .the tutor until partition." Erwin v. Orillion, 6 La. 205; Minors of Poultney v. Barrett, 6 La. 493.

Plaintiffs, in their petition, nowhere allege that they obligated themselves to pay the debts of the succession, nor do they aver that they demanded a partition. They were content apparently to leave the administration of the succession to their father as master of the community and as tutor of the minor children, and it remained with him until his death.

In Berry v. Wagner, supra, this Court said, at pages 472 and 473 of the opinion in 151 La., at page 843 of 91 So. on rehearing:

"By 'the benefit of inventory' is meant the privilege or advantage which an heir may enjoy, of having his liability for the debts or obligations of the succession limited to the extent of the value of the estate which he inherits. Rev.Civ.Code, art. 1032. The benefit of inventory gives an heir the two advantages: (1) of being discharged from the debts of the succession if he abandons all of the property of the succession to its creditors and the legatees; and (2) of not confounding his own property with that of the succession, and of thus preserving the right to claim any debt due him from the succession. Rev.Civ. Code, art. 1054.

"The benefit of inventory, therefore, does not give an heir the right to take possession, unconditionally, or as owner, of any of the property of the succession, without making himself liable personally for the debts or obligations of the succession. When a succession is accepted under benefit of inventory, the estate must be administered and liquidated—even though the beneficiary heir himself should be the administrator—for the benefit of the creditors primarily; the rights of the beneficiary heir being only residuary. Rev.Civ.Code, arts. 1039 to 1070."

As shown in the case of Berry v. Wagner, when a minor has arrived at the age of majority, or a major, for that matter, accepts the succession of a deceased parent unconditionally, he thereby abandons the advantage of the benefit of the so-called inventory. This was not done by the plaintiffs in this case.

Heirs are divided into unconditional and beneficiary heirs. Civ.Code, art. 881. Unconditional heirs are those who inherit without any reservation or without making any inventory, whether their acceptance be express or tacit. Civ.Code, art. 882. Beneficiary heirs are those who have accepted a succession under the benefit of an inventory regularly made. Civ.Code, Art. 883.

The heir who either expressly or tacitly accepts unconditionally binds himself personally to pay all the debts of the succession. Civ.Code, Arts. 1013 and 1023.

The heir who accepts with the benefit of inventory is liable for the debts of the succession only to the value of its effects. Civ.Code, Art. 1054.

When an heir accepts a succession and takes possession of its effects unconditionally, he becomes the owner of the property and the succession, as such, ceases to exist. The recourse of the creditors is against him. If there is more than one heir, the creditor's action lies against each for his virile share. Successions of Dunford and his Wife, 25 La.Ann. 56; Brashear v. Conner, 29 La.Ann. 347; Sevier v. Gordon, 29 La.Ann. 440; Augustin v. Avila, 29 La.Ann. 837; Succession of Thibodeaux, 38 La.Ann. 716; Berry v. Wagner, 151 La. 456, 91 So. 837.

When a succession is accepted under benefit of inventory, and a succession can be accepted for a minor only in that manner, it must be administered and liquidated, even though the beneficiary heir himself should be the administrator, for the benefit of the creditors primarily; the rights of the beneficiary heir being only residuary. Civ.Code, Arts. 1039–1070. Dees v. Tildon, 2 La.Ann. 412; Erwin v. Orillion, 6 La. 205; Jacobs v. Tricou, 17 La. 104; Picou v. Dussuau, 4 Rob. 412; Self v. Morris, 7 Rob. 24; Succession of Ogden, 10 Rob. 457; Blake v. Kearney, 30 La.Ann. 388; Sevier v. Gordon, supra; and Berry v. Wagner, supra. In Dees v. Tildon, the Court stated:

"The fact that a sale of the property of the succession had been made, and that a part of the heirs were of full age and had accepted unconditionally, offered no objection to the appointment of an administrator. Several of the heirs were minors, for whom the succession could only be accepted with the benefit of inventory; and in such cases the Code specially authorizes the appointment of an administrator, upon whom the management of the succession devolves, until a partition be made among the heirs. Civ.Code, art. 1040."

In Erwin v. Orillion, the Court held as follows:

"An estate accepted under the benefit of an inventory, should be administered as an entire thing for the advantage of creditors and heirs, until partition be made. No one of the heirs who may have attained the age of majority, nor indeed the whole of them, in their capacity of heirs, have a right to the administration of a succession, without authority derived from competent power; and where they are united with co-heirs who are minors, and consequently under the protection of a tutor, it appears to us to be the most reasonable and beneficial course that could be adopted, to leave a succession thus situated to the administration of the tutor until partition."

In the case of Keith v. Lee, 13 La.App. 309, 127 So. 139, the Court of Appeal for the Second Circuit, following the rule enunciated in the above mentioned cases, held that an administration of a succession is necessary where there are creditors and minor heirs, though the major heirs by re-

maining in possession, tacitly accept the succession unconditionally.

Notwithstanding the rule laid down in the cases above mentioned, plaintiffs contend that after the ex parte judgment in the Succession of Mrs. Delia Campbell Kelley was signed in 1912, sending her surviving husband, Seaborn H. Kelley, and her heirs into possession with the benefit of inventory, the succession was closed, and thereafter the succession owned no property and owed no debts. That the heirs became the owners of the decedent's half interest in the property and her debts became their debts.

In support of their contention, plaintiffs cite a number of cases, relying particularly on the following cases: Succession of Hacker, 28 La.Ann. 446; Soye v. Price, 30 La.Ann. 93; Beauregard v. Lampton, 33 La.Ann. 827; Boudreaux v. Lower Terrebonne Refining & Mfg. Co., 127 La. 98, 53 So. 456; Mitcham v. Mitcham, 186 La. 641, 173 So. 132, 135, and the cases therein cited.

The effect of major and minor heirs accepting a succession without the benefit of inventory was not before the Court in Mitcham v. Mitcham. A reading of the opinion in the case discloses that the heirs accepted the estates of their deceased father and mother, "purely, simply, and unconditionally," and that, as such, they asked to be recognized and sent into possession of the property left by their deceased parents. The same state of facts existed in the other cases cited by the Court in Mitcham v. Mitcham.

The opinion of the Court in the Succession of Hacker, is extremely short. The facts in that case, as disclosed by the opinion, were as follows: Hacker left a widow and children some of whom were of age and some of whom were minors. The widow was confirmed as natural tutrix. She obtained an order recognizing her as owner of one-half and as usufructuary of the other half of the property, and, as such, was put in possession of the property of the succession. Subsequently, the widow, individually, and as natural tutrix, and the majors joined in executing a mortgage in the sum of $5,000, in favor of Gautier. A third person, upon his application, was appointed administrator of the succession and obtained an order to sell the property on terms. Gautier, the mortgage creditor, the widow, and the heirs took a rule on the administrator to compel the sale of the property for cash instead of on terms. The rule was made absolute and the administrator appealed. Although it appears from the opinion, that the only issue before the Court was whether the property should be sold for cash or on terms, the Court stated that the proceeding to sell the property was illegal, remarking that when the widow and heirs were put in possession, the succession was closed and that it was not within the power of the court to reopen it, citing in support of its statement, 22 La.Ann. 61; 25 La.Ann. 56; 25 La.Ann. 220.

The case in 22 La.Ann. at page 61, is entitled, State ex rel. Widow and Heirs of J. H. Pearson v. Parish Judge of the Parish of Jefferson. The case involved the

application of an individual, who was neither a creditor, an heir, nor an interested party, to be appointed dative testamentary executor. The heirs opposed the application and it was denied on the ground that they had been recognized and put in possession, and that the estate was closed.

The case reported in 25 La.Ann. at page 56, was the Successions of Andrew Dunford and his wife. The controversy there arose over the appointment of a dative testamentary executor and administrator. The heirs opposed the appointment on several grounds, the most effectual ground being that there was no succession to administer because the heirs had previously gone into possession of the property under a regular order of Court. The Court sustained the contention, holding that the judgment putting the heirs in possession terminated the succession, and that the debts of the deceased became the debts of the heirs, each being liable for his verile share.

Sevier v. Sargent is the case reported in the 25 La.Ann. at page 220. This was a proceeding by the creditor of the Succession of Gordon to set aside a judgment putting the heirs in possession and a subsequent partition of the property among them, on the ground of fraud and collusion between the executor and the heirs. The Court held that no fraud had been proved; that the heirs had the right to demand the seizin of the property of the succession from the executor and he had no right to refuse it; and that the succession was closed by the judgment putting the heirs in possession.

In none of the above mentioned cases, which were relied upon by the Court for its statement in the Succession of Hacker, were minors involved, nor was the question of acceptance of a succession under the benefit of inventory at issue. On the contrary, a reading of the opinion rendered by the Court in each case indicates that the heirs in those cases were of full age and that they accepted the successions unconditionally and were recognized and put in possession as such.

In the Succession of Hacker, the Court did not refer to any of the prior decisions of this Court, holding that a succession, accepted under benefit of inventory, must be administered and liquidated, the rights of the heirs being only residuary.

It is plain from what we have said that the cases of Mitcham v. Mitcham and Succession of Hacker have no authoritative value in the present case.

The decision in Soye v. Price marks the only departure from the rule that a succession which has been accepted under the benefit of inventory must be administered and liquidated before its property can lawfully come into possession of the beneficiary heirs.

As pointed out in Blake v. Kearney, 30 La.Ann. 388, the decision in Soye v. Price, "is to the effect that the natural tutors of minor children, may as such take possession of and administer the estates of the deceased parents of such children, unless and until creditors or heirs of age demand the appointment of an administrator." In Blake v. Kearney, which was decided by the same Court (through the same Justice

as the organ of the Court) that decided the case of Soye v. Price, it was expressly held that "a succession is an ideal being, a unity. It can not exist as to one heir and be extinct as to another. To terminate the existence of a succession the heirs must all be sui juris, and have capacity to render themselves, by their acts, unconditionally liable for the succession debts. This a minor can not do; and, therefore, no extra judicial acts or contracts of a minor can legally terminate the existence of the succession."

In Boudreaux v. Lower Terrebonne Refining & Mfg. Co., 127 La. 98, 53 So. 456, the widow and her ten children, eight of whom were minors, were placed in possession of the succession of Boudreaux, under the benefit of inventory. Among the assets of the succession was a large sugar plantation. Louis Bush's Sons were the commission merchants for the plantation. The widow knew little or nothing of business, and could understand the English language but imperfectly and could barely speak it. At the time of Boudreaux's death, there was a cane crop on the way. The commission merchants advised Mrs. Boudreaux, the widow, that she ought to open the succession of her husband. She acted upon the advice, and was recognized as widow in community and, as such, owner of one-half of the estate and usufructuary of the other half, and her children were recognized as the sole heirs. She and her children were sent into possession as such, and she was recognized and confirmed as natural tutrix. Mrs. Boudreaux and the major heirs accepted the succession unconditionally and the minor heirs, under

the law, accepted the succession with the benefit of inventory. In this situation, the Court assumed that the succession was closed, citing in support of the assumption Mayronne v. Waggaman, 30 La.Ann. 974, and Soye v. Price, 30 La.Ann. 93.

We have already commented upon the decision of Soye v. Price. The case of Mayronne v. Waggaman was a sequel to the Succession of Hacker, which we have also commented upon.

The Mayronne case is authority only for the proposition that before an immovable, of which the widow in community and her minor children are the owners, in indivision, can be legally sold or mortgaged, it is necessary that a family meeting, legally constituted, shall set forth in its report that the sale or mortgage is of absolute necessity, or of evident advantage to the minors and give its reasons for its determination; that a family meeting, partly composed of one or more persons who have interests in conflict with those of the minors, is not legally constituted. The property in the Mayronne case was originally owned by Eugene Hacker.

Referring to 28 La.Ann. at page 446, it will be seen that the Succession of Hacker was before this Court on the application of an administrator to sell the property on terms of credit and that Gautier, the mortgage creditor, intervened and obtained a modification of the order so as to require the sale to be for cash. In granting the modification, this Court stated that the succession was closed by the putting of the widow and the heirs in possession. Based on this decision, the Court in the Mayronne

case, in discussing the legal proposition presented for decision, stated that the Succession of Hacker was closed.

The opinion in the Boudreaux case shows that Louis Busch's Sons went on making advances to the plantation for maturing and harvesting the growing crops and for the living expenses of the family. Mrs. Boudreaux, individually and as tutrix, and her major children applied for and were granted authority to mortgage the plantation to secure the advances. Each year thereafter, for a period of six years, additional advances were made and secured by similar proceedings. Finally, the indebtedness became so great that the commission merchants were unwilling to go any further in making advances on the plantation unless a settlement of accounts was had and a judgment rendered closing the matter. Accordingly, Mrs. Boudreaux and the major children, confessed judgment. Mrs. Boudreaux accepted service as tutrix of her minors and judgment was rendered against them. The proceeding under review in the case reported in 127 La. 98, 53 So. 456, 461, supra, was a suit brought by one of the minors, who had reached his majority, and three of the other heirs, who were still minors, appearing through their tutrix, to annul the judgment. One of the claims made by the defendants was the claim that the ownership of the plantation was in the succession through Mrs. Boudreaux, administering co-tutrix or acting as administratrix, and not in the possession of Mrs. Boudreaux and her children individually. The Court stated that this contention was "simply in open and direct opposition to the facts of the case." The Court stated that "the plantation was being operated by Mrs. Boudreaux individually and as the tutrix and legal representative of her children and by the major children jointly for their joint account and benefit, as property belonging to them, of which they were in actual possession; and it was on that theory that they borrowed money for operating it, and that they mortgaged it."

The Court went on to say further: "If the property had continued to be dependent upon the succession of Alfred Boudreaux, and in the possession of its administrator or legal representative, the cultivation of it would have had to be for the benefit of the succession, and the money for operating it would have had to be borrowed in the name of the succession, and the mortgages would have had to be given by the succession. We do not see how, after having taken the notes of Mrs. Boudreaux and the heirs individually for the debt, and taken mortgages from them individually, and sued them individually, the defendant could be listened to for a moment to say that the borrower and debtor was the succession, and not Mrs. Boudreaux and the heirs individually." It was in connection with this state of facts that the Court commented upon the decisions in Blake v. Kearney and Soye v. Price, stating that in order for the decisions to be reconcilable the former must be taken with the qualification that there must be an administration only when an heir or a creditor, is demanding an administration; that the doctrine of Soye v. Price is, the succession terminates when the heirs, whether minors or majors, go into actual possession without opposition.

This comment was in the nature of obiter, since it was not necessary to the decision of the case. As we have hereinabove shown, defendants' claim in this respect was rejected because the court found that the money was not lent by the defendant to the Succession of Boudreaux, but was lent to Mrs. Boudreaux and the heirs of Boudreaux, individually, from whom the notes and mortgages were taken and against whom suit was brought. Therefore, defendants could not be heard on their claim that the succession and not the widow and heirs were its debtors.

In Beauregard v. Lampton, 33 La.Ann. 827, the widow and major heir of Lampton were put in possession of the estate under the benefit of inventory. Subsequently, Mrs. Lampton died and her daughter inherited her interest and remained in possession and control of the property until an agent of certain nonresidents, claiming to be creditors of the estate of Lampton, applied to be appointed curator on the allegation that the succession was vacant. The proceeding for appointment of an administrator was independent of the original mortuary proceeding, to which no reference was made. The Court held that it did not appear the creditors who provoked the administration had ever demanded payment from the heir, and that the judgment in the succession of Lampton, as long as it remained unrevoked, operated as a closing of the succession and was a bar to the demand for an administration of the succession. The Court based its decision on the prior decisions of Soye v. Price, Augustin v. Avila, Sevier v. Sargent, Fowler v. Gordon, and Succession of Durnford. We have

hereinabove commented upon these decisions except Fowler v. Gordon. In all these cases, except Soye v. Price, but including Fowler v. Gordon, the heirs were put in possession unconditionally. The Court referred to Soye v. Price, but in interpreting that decision did not refer to the case of Blake v. Kearney, decided by the same Court.

In Beauregard v. Lampton, the daughter of Lampton, who had inherited the interests of the mother, opposed the suit by the administrator.

In the present case, the application for the appointment of an administrator was not a separate proceeding, but was a proceeding brought in the original mortuary proceeding itself. The applicant was one of the heirs who, harassed by creditors of the matrimonial community, sought the administration for the purpose of settling the community estate. His application was not opposed by any creditor, or heir, or any other interested party. The administration was ordered, conducted, and completed without objection by the present plaintiffs. It was not until the discovery of oil in the vicinity of the property more than sixteen years thereafter that plaintiffs raised the objections they are urging in the present suit.

In the Succession of Baumgarden, 36 La.Ann. 46, Chief Justice Bermudez, speaking for the Court, after referring to Article 1047 of the Civil Code providing that major heirs who have accepted and who may, after deliberation, also accept unconditionally, stated: "It [Civil Code Article 1047] has been construed as au-

thorizing the taking of possession jointly by heirs of age concurrently with minors. Soye v. Price, 30 [La.] Ann. 93; and as justifying an administration where one of the heirs of age demands one and there is a minor, for whom the law accepts under benefit of inventory. Blake v. Minors, Kearney and Lake, 30 [La.] Ann. [388] 389."

■ Article 1047 of the Civil Code provides: "If there be several heirs to a succession, some of whom have accepted unconditionally, and others claim the benefit of the term for deliberating, the judge * * * shall * * * cause an inventory to be made of the effects of the succession, and shall appoint an administrator to manage them, until a partition of the same be made among the heirs."

The codal article obviously applies only to major heirs. The law does not allow a minor heir time for deliberating, and there is no reason why it should, since the succession is accepted for him with the benefit of inventory immediately upon its being opened by the death of the de cujus.

■ In the case before the court, the major heirs did not claim the benefit of the term for deliberating. They accepted the succession of their deceased mother with the benefit of inventory, and a like acceptance was made for the minor heirs by the operation of law. The rights of the heirs in their mother's estate were merely residuary, and were not ascertainable until the estate was liquidated. The heirs were entitled only to the residue left after the payment of the debts and charges due by the succession. The only effect of the ex

parte judgment recognizing and sending the heirs into possession with the benefit of inventory was to recognize and send them into possession of the residium of the estate, which proved to be exactly nothing when the estate was finally administered and settled.

■ At the time Thomas L. Kelley, one of the heirs, upon the insistence of the first mortgage creditor, applied for the administration of the succession of Seaborn H. Kelley and his wife, Mrs. Delia Campbell Kelley, the matrimonial community had not been liquidated. After the death of his wife, the community property was held intact and was managed by Seaborn H. Kelley, as surviving spouse and usufructuary, without any objection on the part of the creditors or the major heirs, and notwithstanding Seaborn H. Kelley lost his usufructuary rights by his second marriage. At the death of Seaborn H. Kelley, the community property was still intact. The two successions were so intimately connected with the matrimonial community as to form together an entire mass called the estate, which was not only liable for the payment of the common debts, but also for the distributive interests of the heirs in the residue, since they had not renounced. Fontenot v. Fontenot, 157 La. 511, 102 So. 590, citing Lawson v. Ripley, 17 La. 238, 248.

■ The matrimonial community could have been settled in the succession of the husband alone. Until the community was liquidated, the husband's succession was entitled to the control of the property of the community for the purpose of liquidat-

ing it. Fontenot v. Fontenot, supra. Kremer v. Kremer, 121 La. 484, 46 So. 600. Since the matrimonial community could have been settled in the Succession of Seaborn H. Kelley alone, there could be no sound objection to the settlement of the community forming an entire mass by a joint administration of the successions of Seaborn H. Kelley and Mrs. Delia Campbell Kelley. The administrator represented both successions. The community property was bound for the community debts, and the sale of the community property was inevitable, not only in order to secure funds for the payment of the debts, but also to ascertain the eventual rights of the heirs.

At the time Thomas L. Kelley applied for the appointment of administrator of the succession of his father and mother, all the heirs had reached the age of majority, except Sadie Kelley, and she had been fully emancipated by marriage. The proceeding was regular in every respect. The administrator was appointed, the sale of the community property was completed, and the final account and tableaux of the administrator was filed and homologated. All these proceedings were conducted without any opposition or objection on the part of the heirs, who made no complaint concerning them until the present suit was filed, more than sixteen years after the proceedings had been terminated. In these circumstances, we are at a loss to see any foundation for this ground of plaintiffs' attack on the succession proceedings and the administrator's sale therein made.

Under Article 4 of their petition, plaintiffs refer to the fact that on February 5, 1916, Daniel L. Kelley and Thomas L. Kelley transferred their undivided interest in their mother's succession to Seaborn H. Kelley, Jr. Daniel L. Kelley, one of the plaintiffs, explained in his testimony why he and his brother, Thomas L. Kelley, executed the transfer to Seaborn H. Kelley. His explanation was that the transfer was not made for the purpose of accepting the succession of their mother, but in an attempt to avoid such acceptance because of a judgment that the heirs of J. Hopes Philips had obtained against them and their father. As a matter of fact, the interest of Daniel L. Kelley and Thomas L. Kelley in the succession of their mother was only a residuary interest, which proved to have no value when the succession was administered and liquidated.

Second. We now come to the second part of the primary question on which plaintiffs rely to support their action, namely, whether the Succession of Seaborn H. Kelley was accepted unconditionally by his heirs and, therefore, was liquidated prior to the administration provoked by Thomas L. Kelley.

Seaborn H. Kelley died on January 10, 1921. On January 15, 1921, the plaintiffs and the defendants signed a document setting forth that what was referred to as the Carrollton Avenue property in the City of New Orleans was the separate and paraphernal property of Mrs. Josephine Leggett Kelley, second wife of Seaborn H. Kelley, and assigning to her the proceeds of a life insurance policy amounting to $2,000, payable to the estate of the deceased. On the same day, Mrs. Josephine Leggett Kelley

signed an instrument releasing any claim that she might have to the estate of Seaborn H. Kelley. On the same day also, six of the plaintiffs and the defendant, Thomas L. Kelley, entered into a written agreement, in which they expressed the desire to preserve the estate in its present shape in indivision for six years, and that "in order to do this," they leased the plantation to Thomas L. Kelley for a term of six years at an annual rental of $1,425. It was further agreed that this rental was to be paid to Wilson A. O'Quin, the husband of Cora Kelley, one of the plaintiffs herein, who was named manager of the estate and who was to use the money to pay the taxes and for the necessary repairs, and to apply the surplus, if any, to the settlement of the outstanding debts due by the estate. At the time these instruments were signed, two of the children were minors.

Plaintiffs contend that in assigning the life insurance policy to Mrs. Josephine Leggett Kelley, and the leasing of the plantation to Thomas L. Kelley, the children of Seaborn H. Kelley acted as heirs and that their acts as such constituted an unconditional acceptance of the succession of their father.

Article 988 of the Civil Code provides that the acceptance of a succession may be either express or tacit. "It is express," says the codal article, "when the heir assumes the quality of heir in an unqualified manner, in some authentic or private instrument, or in some judicial proceeding. It is tacit, when some act is done by the heir, which necessarily sup-

poses his intention to accept, and which he would have no right to do but in his quality of heir."

Article 992 of the Civil Code provides that if the person called to the succession does an act which is foreign to the succession but which, nevertheless, manifests his will to accept the succession, he becomes liable as an heir.

In addition to Articles 988 and 992 of the Civil Code, plaintiffs rely on the case of Todd v. Place, 9 La.Ann. 517 and Foster v. Spann, 170 La. 1019, 129 So. 622.

According to the terms of the codal articles, the capacity of heir must be assumed in an unqualified manner, or in such a manner as to clearly manifest the intention of the party called to the succession to act in such capacity.

In other words, it is necessary to distinguish acts of ownership from those of mere administration or preservation, or preparatory acts tending to ascertain the value of the succession. Deshotels v. Lafleur, 134 La. 1052, 64 So. 905.

We shall first consider the effect of Seaborn H. Kelley's second marriage to Josephine Leggett. The marriage terminated the usufruct which he enjoyed of the undivided one-half of the community property belonging to his first wife. Plaintiffs, however, made no effort to obtain possession of the property to which they became entitled by reason of their father's second marriage, nor did they offer to pay the indebtedness due by the first community. In this suit plaintiffs do not claim any rights which may have existed in the matri-

monial community of their father and his second wife, Josephine Leggett Kelley. In dealing with Mrs. Josephine Leggett Kelley, the children of Seaborn H. Kelley and Mrs. Delia Campbell Kelley did not give up anything belonging to the succession of their deceased parents. All they did was to sign a release of any rights or claims, if any, they might have against a certain piece of real estate that Mrs. Josephine Leggett Kelley claimed was her separate and paraphernal property. In doing this, they did not make themselves liable as heir, because their act did not include the will to accept the successions. Civil Code, Article 991.

In surrendering to Mrs. Josephine Leggett Kelley the life insurance policy for $2,000 the children of Seaborn H. Kelley and Mrs. Delia Campbell Kelley did not in any way indicate that they were accepting or controlling any part of the succession in their own right, purely and simply. In fact, at that time two of the heirs were minors and the Succession of Mrs. Delia Campbell Kelley was still an unliquidated succession. The proceeds of a life insurance policy payable to the decedent's estate are not available for the payment of the debts of the decedent and to that extent may be considered as forming no part of his estate. Act 88 of 1916; Succession of Dumestre, 174 La. 482, 141 So. 35.

Since the proceeds of the life insurance policy were exempt from the payment of the insured's debts and, to that extent, formed no part of the estate, we fail to see how the surrender of the policy to Mrs. Josephine Leggett Kelley could be considered as an acceptance of the Succession of Seaborn H. Kelley by his children.

The creditors of Seaborn H. Kelley had no interest whatever in the proceeds of the policy. They could not control disposition of the fund nor were they prejudiced in any manner by the act of the insured's children in surrendering the policy to his widow. Obviously, neither the plaintiffs nor the defendant, Thomas L. Kelley, intended by their act to accept the succession of their father and thereby become liable for the large indebtedness resting against his estate.

We shall next consider the effect of the document executed by the children of Seaborn H. Kelley on January 15, 1921. Plaintiffs argue that the document evidences a lease by them to Thomas L. Kelley of the property in this suit, and that being a lease, it constituted an unconditional acceptance on their part of the Succession of Seaborn H. Kelley. In analyzing the document, we find that the signers thereof began by stating its purpose which was their desire "to preserve the estate in its present shape," and their agreement to hold the estate in indivision for a period of six years. They expressly agreed that all the revenues derived from the operation of the estate should be received by Wilson A. O'Quin, the husband of one of the plaintiffs, who was named manager of the estate, and should be used by him to pay taxes and make necessary repairs, and from the surplus, to discharge all outstanding indebtedness of the estate.

It is clear from the language in which the document is couched that the parties thereto were aware of the fact that the succession owed debts which they were not willing to assume; that their intention in executing the document was to allow the property to remain as it stood at the time of their father's death and to have the property carry itself and pay the debts; in other words, they were not willing and did not intend to accept the succession unconditionally, but desired that the status of the estate would remain unchanged, and that without their assuming any personal responsibility, the revenues from the property would be used exclusively to carry the property and pay off the debts of the estate.

This case differs from the case of Todd v. Place and Foster v. Spann, cited by plaintiffs in the important particular that, unlike those cases, it was not intended that plaintiffs in this case should receive, and they did not receive, by way of rent or otherwise, any part of the revenues derived from the property. At the time the so-called lease was signed, two of the children, Sadie Kelley and Leon Kelley, were minors and therefore could not, either expressly or tacitly, accept the succession of their father unconditionally. They could accept the succession only with the benefit of inventory, and they could not do this or otherwise act in the succession without the assistance of a tutor, and they had no tutor. Neither of these children, on reaching majority, took any action which affirmatively indicated an intention to ratify the so-called lease.

In addition to the charge that because they had been closed the administration of the Successions of Seaborn H. Kelley and Mrs. Delia Campbell Kelley was without effect, plaintiffs charge that the proceeding for the appointment of the administrator and the sale of the property at the administrator's sale was the result of a fraudulent scheme by which Thomas L. Kelley intended to acquire title to the property and to divest the interest of his co-heirs therein without compensating them therefor. Plaintiffs allege that, in furtherance of the scheme, Thomas L. Kelley induced his wife to obtain a separation of property so that she might purchase the property from the adjudicatee at the administrator's sale.

In connection with these charges we note that after Fred G. Cotton, the mortgage creditor, purchased the property at the administrator's sale, he conveyed it to Mrs. Bessie Heath Kelley, wife of Thomas L. Kelley. This sale was made on February 24, 1923, and Mrs. Bessie Heath Kelley and her husband have been in undisturbed possession of the property since that date.

Thomas L. Kelley was a forced heir of his father and mother and he could have purchased the property in his own name. Civil Code, Article 1146. Therefore, plaintiffs' charge, that he caused his wife to obtain a separation of property for the purpose of purchasing the property of the succession, is not sufficient to establish bad faith.

Mrs. Bessie Heath Kelley inherited approximately $10,000 from her parents, and

she turned over practically all the money to her husband to be used by him in his farming operations on the property involved in this suit.

■ The judgment of separation of property could not and did not prejudice plaintiffs, and they are without right to ask that the judgment be declared null or ineffective. Dugas v. Dugas, Her Husband, 6 Rob. 527; Turnbull v. Davis, 1 Mart.,N.S., 568; Chaffe v. Forcheimer, 35 La.Ann. 205.

■ Plaintiffs allege, among other things, that they were never notified of the proceedings for the administration of the succession of their parents, and that if they had been so notified, they could have paid the succession debts. They further allege that the property was never advertised and sold at public sale. The record shows, however, that the administrator was regularly appointed, an inventory was taken, a petition for the sale of the property was filed showing a list of debts, an order of sale was issued, and the property was actually advertised for sale. Plaintiffs produced one witness, Wilson A. O'Quin, the husband of one of the plaintiffs, who testified that he was in Marksville, the parish seat, on the day of the sale, from 8:30 o'clock A. M., to 4 o'clock P. M., and that no sale was made. His testimony was flatly contradicted by that of Thomas L. Kelley, who testified that the sale had taken place according to the advertisement, and that the attorney representing J. D. Bell, one of the creditors, was present at the sale. Moreover, the proces verbal was regularly executed and filed, showing that the property had been sold to Fred G. Cotton, the first mortgage creditor. The record discloses that at the time Mrs. Delia Campbell Kelley died, the debts of the matrimonial community were largely in excess of its assets, and that at the time of the death of Seaborn H. Kelley the status of the estate was unchanged. When Delia Campbell Kelley died on July 9, 1911, the debts of the matrimonial community amounted to $36,025.72, and the value of the community assets, as shown by the inventory, was $26,600, or an excess of community debts over community assets of $9,425.72. When Seaborn H. Kelley died in January, 1921, the debts of the community estate and of Kelley himself, amounted to $34,746.00. The property brought $5,681 at the administrator's sale, and as shown by his final account, filed on March 21, 1923, the proceeds were used by the administrator to pay two years' back taxes due on the property, the cost of administration, and a portion of the debt due on the first mortgage. The balance due on the first mortgage and the other indebtedness remained unsatisfied.

We have read the testimony given by plaintiffs' witnesses, and, without discussing it in detail, we find it shows the following state of facts: At the time of the death of their father, all the plaintiffs, as well as the defendant Kelley, knew that the matrimonial community was heavily involved in debt and that it was their desire, if possible, to pay the debts from the revenues of the property and thereby keep the family home intact. None of the heirs of Seaborn H. Kelley and Mrs. Delia Campbell Kelley were in a position to pay

the debts due by the successions of their mother and father. All the plaintiffs had knowledge that the property had been sold at public auction for the purpose of paying the mortgage indebtedness although they claimed at the time of the trial of this case, they thought the property had been sold at foreclosure sale and not at an administrator's sale.

During the sixteen years elapsing from the date of the administrator's sale to the date of instituting the present suit, the plaintiffs enjoyed the hospitality of Thomas L. Kelley and his wife, Mrs. Bessie Heath Kelley, lived in their home at various intervals, and some of the plaintiffs received financial aid from Thomas L. Kelley. At no time during the entire period did plaintiffs offer to pay the debts of the successions of their parents, nor did they mention or indicate to Thomas L. Kelley and Mrs. Bessie Heath Kelley that they were claiming or intended to claim any rights or interests in the successions.

Thomas L. Kelley testified that, like his brothers and sisters, he felt that the debts due by the successions of their mother and father could be worked out, but that shortly after he attempted to do this, F. G. Cotton, one of the mortgage creditors, began to press him for payment of the mortgage held by him. He wrote his brothers and sisters, advising them of the situation, but none of them seemed interested or in any way offered to cooperate with him. He first thought that he could refinance the plantation if the mortgage creditor would permit, but when he consulted his lawyer, who had been his father's lawyer, he was advised that the debts against the succession were largely in excess of the value of the property and that the only course to pursue would be to provoke an administration of the successions and that he, accordingly, left the matter in the hands of his attorney for action. Because of a judgment resting against him, Kelley was advised by his attorney that he could not personally acquire the real estate free from the mortgage resulting from the recordation of the judgment, but that his wife, Mrs. Bessie Heath Kelley, had a good claim for a separation of property, which was accordingly obtained. All these matters were placed of record and were open to public inspection for more than sixteen years.

In view of these circumstances, it is exceedingly strange that plaintiffs did not discover the alleged irregularities and fraud of which they now complain before the institution of this suit. In this connection it is significant to observe that according to the testimony of Otey L. Kelley and D. L. Kelley, who were both majors at the time their mother died, they did not interest themselves in the property until shortly before the present suit was brought. After oil was discovered within the vicinity of the property, they were advised by "oil scouts" and "a bunch of title busters" that they had a chance to get the property back. Upon receiving this advice, Otey L. Kelley immediately called a family meeting and his youngest sister was more active "at the start than anybody else."

After the completion of the trial in the district court, plaintiffs filed a plea of prescription attacking the notes held by F. G.

Cotton and J. D. Bell. The plea of prescription is necessarily a special plea and should have been filed by plaintiffs at the time the administrator's sale was applied for and not collaterally at this late date. So far as the note held by F. G. Cotton is concerned, the record discloses that it was not prescribed, because it bore endorsements showing interest payments and extensions of the note up to and including January 5, 1922. Although the notes held by J. D. Bell on their face appear to have been prescribed, nevertheless, it may be that if the plea had been seasonably made, Bell may have been able to meet it by showing an acknowledgment of the debt.

To permit plaintiffs to succeed in their demands to be decreed the owners of property, belonging to the successions of their deceased parents and which was administered and sold at public sale as far back as the year 1923, would require that we approve the proposition that the purchasers of the succession property should pay the succession debts and that the property should be returned to plaintiffs free of all debt. "To this," in the language of the Court in Green v. Baptist Church, 27 La.Ann. 563, "we can not assent."

Since we have reached the conclusion that the proceedings and administrator's sale in the Successions of Seaborn H. Kelley and Mrs. Delia Campbell Kelley were regular and free from fraud, it is not necessary that we should consider the pleas of estoppel and prescription filed by the defendants in bar of plaintiffs' action.

For the reasons assigned, the judgment appealed from, in favor of plaintiffs and

against defendants decreeing plaintiffs to be the owners of an undivided one-half interest in the property described in the judgment, free and clear of any leases, royalty deeds, or other instruments, executed by Mrs. Bessie Heath Kelley and Thomas L. Kelley, is annulled. It is now ordered that there be judgment in favor of defendants and against the plaintiffs, rejecting plaintiffs' demands and dismissing their suit, at plaintiffs' cost.

O'NIELL, C. J., dissents.