No. 10,135.

SUCCESSION OF ADÈLE LAMM.

OPPOSITION OF MRS. PAULINE KAUFMAN.

Judgment having been contradictorily rendered in a contest between two applicants for the appointment of an administrator, and the unsuccessful party having thereafter joined issue on the merits with the successful party in a suit instituted by him as administrator of the succession, this cannot be considered and treated as such an acquiescence in said judgment as would prevent a *subsequent* appeal therefrom.

When the husband and survivor of the community dies without having administered the succession of his predeceased wife, of which he had the usufruct, his heirs being also the heirs of his wife, the two successions may be settled and distributed among the heirs in *his* succession alone.

The administration of the succession of the deceased husband necessarily involves with it the administration of the community.

It is only after the heir has been called on by the creditors of the succession to renounce or to take the inheritance, and he asks time to deliberate, that an administrator can be appointed.

The heir who accepts a succession, with the benefit of an inventory, is placed *nearly* on the same footing with curators of vacant estates. His engagement is to administer *as beneficiary heir*.

The result of the whole legislation on the subject is that the heir who accepts, with the benefit of inventory, may institute suits touching the succession without making himself unconditionally liable for his ancestor's debts.

He may even institute suits that are conservatory in their character *before* he either accepts or rejects, provide he claim time for deliberation and make proper reservation, without assuming the capacity of a *simple* heir.

APPEAL from the Seventeenth District Court, Parish of East Baton Rouge. *Burgess, J.*

---

*Cross & Buckner* and *Bernard Titche* for Opponent and Appellant.

*Kernan & Laycock* and *Leonard, Maxks & Bruenn* for the Administrator, Appellee.

---

ON MOTION TO DISMISS APPEAL.

The opinion of the Court was delivered by

WATKINS, J. This case presents a controversy over the appointment of an administrator of the succession of Adèle Lamm, deceased. She was the wife of Leopold Dalsheimer, deceased. There was a community existing between them, and neither owned any separate property. The wife died on the 26th of October, 1879, and the husband in the spring of 1886. The latter left a will, containing a be-

-quest in favor of Mrs. Pauline Kaufman, one of his forced heirs, of all the disposable part of his fortune; and she was appointed executrix with full seizin. She obtained the probate of the will, qualified as executrix and had an inventory taken, all on the 22d of June, 1886.

On the 6th of July, afterwards, Mrs. Sarah Rose and Henry Dalsheimer, co-heirs of Pauline Kaufman, joined in a petition for the appointment of J. W. Hubbs as administrator of the succession of the predeceased wife, Adèle Lamm, and caused an inventory of *her* estate to be taken. This application was resisted by Pauline Kaufman on several grounds; but she, in the alternative, prayed to be appointed administratrix, if an administration was deemed necessary.

On the trial the court held that an administration was necessary, and that the opponent was entitled to be appointed on giving bond according to law; but it further decreed that upon her failure to furnish a satisfactory bond Hubbs should be appointed upon furnishing bond in her stead.

In January, 1888, Pauline Kaufman procured this appeal, and in this Court—Hubbs having in the meanwhile obtained confirmation of his appointment—he seeks its dismissal on the ground that she had acquiesced in the judgment appealed from by joining issue on the merits with him in the suit entitled J. W. Hubbs, administrator, vs. Mrs. Pauline Kaufman, executrix, the record of which is now before us on appeal, and which is annexed hereto for reference.

It is clear to our minds that it is altogether insufficent for the purpose of proving acquiescence.

The appearance of Mrs. Kaufman was at a date subsequent to the appointment and qualification of Hubbs under the decree of court. That decree was valid on its face. This appeal was deemed necessary to obtain relief from it.

Had she tendered, *in limini*, an exception to Hubbs' capacity to stand in judgment as administrator of Adèle Lamm's succession upon the introduction of this succession record in evidence, it would have been overruled. It is, therefore, obvious that she thereby abandoned no valuable right.

Had she obtained her appeal prior to the filing of her answer it could not have been considered as an abandonment of it, and obtaining it subsequently has no additional force.

The motion to dismiss is denied.

## ON THE MERITS.

On the inventory caused to be taken by Pauline Kaufman of the succession of Leopold Dalsheimer there appear only two items of property, viz:

1. Community real estate........................$5,000 00
2. Community personal estate........... ...........   48 50
                                                    _____
                                                    $5,048 50

This inventory purports to represent the *entire* interest of the two deceased spouses in the community.

On the one taken of the succession of Adèle Lamm, in pursuance of Hubbs' application on the 6th of July, 1886, there appear the following items of property, viz:

1. Community real estate (one-half interest)...........$3,000
2. Community rights and credits (one-half interest).....  5,850
                                                        _____
                                                        $8,850

The real estate that is embraced in each is the same, and, with the exception of $48.50, the *rights and credits* appraised in the latter represent a valuation of certain articles of community property which Leopold Dalsheimer is alleged to have used and consumed during the continuation of his usufruct and for which he is responsible to the heirs of Adèle Lamm.

Pauline Kaufman opposed the application made for the appointment of Hubbs, on the following grounds, viz:

1. That the succession was already under administration as community property—it having been included in that of Leopold Dalsheimer; and that it is neither necessary or expedient that the same estate should be subjected to another administration.

2. That the *whole* of said property was in the custody and under the control of Dalsheimer as usufructuary and owner, and that the affairs of the community cannot be liquidated and settled elsewhere than in *his* succession.

3. That the *whole* property is under her seizin under the will, in pursuance of a judgment of the court that cannot be attacked collaterally.

In the alternative she prays to be appointed administratrix, if an administration separate from that of the succession of Dalsheimer is deemed necessary or expedient.

Judgment went in favor of opponent, as stated above; but she being dissatisfied therewith appealed.

In the Succession of McLean, 12 Ann. 222 *et seq.*, it was held "that

the administration of the succession of the deceased husband involves with it the administration of the community."

The Court said in Flournoy vs. Flournoy, 29 Ann. 741, that "where the husband and survivor of the community dies without having administered the succession of the wife, of which he had the usufruct, his heirs being also the heirs of his wife, the two successions may be settled and distributed among the heirs *in his succession alone*," etc. 22 Ann. 131, Pennison vs. Pennison.

The instant case is exactly similar. The heirs of Adèle Lamm are identically the same as those of Leopold Dalsheimer. The former died first, and the latter did not administer her succession at all. We gather from the record that her succession is solvent and has a large claim against that of her husband for an interest in the personal effects of the community.

We can perceive no reason why that claim, as well as all others, could not be adjusted and settled in due course of the administration of the Dalsheimer's estate.

A community is not a partnership, but even a closer and more intimate union of interests.

In case there should be an insufficiency of community property to pay community debts, the separate property of the husband may be called upon to contribute.

Not only is it entirely proper and right that the succession of the husband should embrace that of his deceased partner in community, but two distinct and separate administrations are unnecessary and would occasion increased expense and litigation.

We are of the opinion that the judgment appealed from is erroneous and should be set aside.

It is, therefore, ordered, adjudged and decreed that the judgment appealed from be annulled, avoided and reversed; and proceeding to render such judgment as should have been rendered in the court below, it is ordered, adjudged and decreed that the application for the administration of the succession of Adèle Lamm be rejected, and that all costs of both courts be taxed against petitioner and appellee.

### On Application for Rehearing.

Owing to the importance of the subject we have thought proper to supplement our views heretofore expressed and against which error is urged.

The application suggests, as a corollary of our opinion, that if the succession of the predeceased wife cannot be administered separately

from that of her subsequently deceased partner in community, her heirs are denied the privilege of accepting *her* succession, with the benfit of inventory, and *ergo* our opinion is wrong.

The claimants for administration conclude their brief thus:

" The heirs of Mrs. Lamm could sue the executrix of Dalsheimer for and force a settlement of the community; but the heirs of Mrs. Lamm do not wish to accept her succession purely and simply ; they do not wish to bind themselves personally for any debts with which her succession may be encumbered ; but they are interested in having her succession *administered in order that its debts may* be paid, and that they may receive anything left after payment of debts. The matter *cannot be settled until some one is authorized to act for the succession* ot Mrs. Lamm, and the court cannot, we think, properly refuse to appoint an administrator to her succession."

The legal deduction, from this argument, is that an heir cannot accept a succession, *with the benefit of an inventory,* unless an administrator be appointed to take charge of its property and settle its affairs. In support of this proposition they cite and rely upon *Erwin vs. Orillion,* 6 La. 212, in which the court expressed the opinion that " the articles which treat of the appointment of an administrator are from 1034 to 1040 inclusive (O. C.), and they seem to require the appointment of an administrator *in every case where a succession is accepted, with benefit of inventory.*"

We have been at the pains to make careful research into our jurisprudence on this question, and have found the following decisions, which appear to favor the opinion quoted, viz.: 6 La. 493, Poultney vs. Barrett; 17 La. 500, State vs. Judge; 14 Ann. 641, State vs. Leckie; 21 Ann. 364, Succession of De Roffignac; 27 Ann. 351, Succession of Linton.

Opposed thereto we find, however, quite as many, and quite as respectable authorities.

Among the number is *O'Donald* vs. *Lobdell,* 2 La. 299, from which we make the following pertinent extract, viz.:

" If, indeed, on opening the succession, and before the heir has accepted or rejected the succession, it was a matter of course that an administrator should be appointed, then any act of the heir, *previous to acceptance,* would be irregular, and the suit could not be maintained; but by law the appointment of such an officer is not a matter of course. It is only after the heir has been called on by the creditors to renounce, or take the inheritance, and he asks time to deliberate that an administrator can be appointed. The result of the whole leg-

islation on the subject we take to be, that the heir *may institute suits before he accepts or rejects.* It is true, if he be of the age of majority, and do so *without qualification,* this in itself will be an acceptance.

\*      \*      \*      \*      \*      \*      \*      \*      \*

" If the creditors apprehend any damages from the heir collecting funds of a succession, which he may thereafter reject, they have the power to call upon him to accept or renounce; and, in default of his *immediate* decision, an administrator can be placed in charge of the estate. Until they do so, however, the succession is not in abeyance, and without a representative.

" The law has expressly said that the heir represents the succession, and is seized of it from the *moment* it is opened." La. Code, 992, 1029, 1032, 1034, 1037.

A similar doctrine was maintained under the old code, antecedent to 1825, as the following quotation from *Cox* vs. *Martin's Heirs,* 12 O. S. 363, will attest:

" On referring to the Civil Code, where it treats of heirs with the benefit of inventory, it seems that they are placed *nearly* on the same footing with curators of vacant successions.

" In p. 168, Art. 104, we find it laid down that although the heir who accepts with the benefit of an inventory be really the lawful heir and true successor of the deceased, the effect, however, of the benefit of an inventory is to make him appear, in the eyes of the creditors and legatees of the succession rather *as* the administrator of the estate than as the true heir and proprietor of it.

" They may be required, under certain circumstances, to give security for the value of the property contained in the inventory, etc." 11 O. S. 675, Dufour vs. Camfranc.

In the still more recent case of Flower vs. O'Connor, 7 La. 209, that view was strengthened and fortified by a clearly expressed and well reasoned opinion, from which we have made the following extracts, viz.:

" The defendant being the mother of S. Bell, who died without issue, became his heir-at-law, and was seized of his estate at the moment of his decease, *subject, however,* to her right, \* \* \* *either to renounce it or to limit her liability to creditors by accepting with the benefit of inventory.* She went before the parish judge \* \* and declared her intention to accept the succession with the benefit of inventory.

\*      \*      \*      \*      \*      \*      \*      \*      \*

" The acceptance of the estate \* \* \* was an engagement, as relates to creditors, that if she did not administer the estate according.

to law, *as beneficiary heir,* she would be personally liable for the debts; that if she neglected to take an inventory and other conservatory steps; if, by disposing of the property belonging to the estate as her own, she put it out of her power to make to the creditors a fair exhibit of the means of the estate to pay its debts, then the creditors should have the right to consider her as having forfeited the benefit of inventory and made herself *unconditional* heir."

These views are in strict conformity with the provisions of the Code of Practice, with regard to the method of making settlements of successions.

Articles 990 and 991 provide the mode in which creditors may obtain the sale of the property of vacant estates.

Article 992 declares that " the principles contained in the preceding articles shall apply to *all successions accepted with the benefit of inventory,* whether the heirs are minors or of age, *and* to all successions administered by administrators."

Article 993 indicates the mode of classifying and the order of paying debts of a vacant estate, and provides that, on default of proceeding accordingly, execution may issue against the property of the curator.

Article 994 provides that like execution shall issue against a tutor or curator " in the same manner as is provided in said (preceding) article against the beneficiary heir, *and* curator of a vacant estate; and, on said execution, the property of said tutor or curator shall be sold *in the same manner as that of a beneficiary heir or curator of a vacant estate.*"

It must be borne in mind that, in the cited cases, there was under consideration the rights and claims of beneficiary heirs who had accepted their ancestor's successions with the benefit of inventory, not those of heirs who had been called upon by the creditors of the deceased to accept or reject, and who had claimed time to deliberate, and not those of creditors demanding, on that account, the appointment of an administrator.

And such is the apparent situation of the heirs of Adèle Lamm—at least, they signify a willingness to venture such an acceptance, if they should not incur responsibility as *simple* heirs on that account.

In further illustration and enforcement of the principle announced in the older cases, we find in Bryan vs. Atchison, 2 Ann. 462, a concise statement of it, as applicable to their exact attitude towards the succession of Lamm, viz: " It is true that, under the dispositions of the Civil Code, *when the heirs claimed the time to deliberate, an administrator was to be appointed in all cases,* and when the succession was

*afterwards* accepted under the benefit of inventory, the administrator was to continue in his functions, and settle and liquidate the succession."

But the Code of Practice, subsequently adopted, provides that an administrator shall be appointed in such cases *if any of the creditors of the succession require it,* and this we take to be the rule now in force, as being the last expression of legislative will, and having, moreover, the advantage to be founded in reason, and to harmonize with other dispositions of the Code of Practice relating to the administration of successions." *Vide,* C. P. 976; R. C. C. 1041 (1034).

That decision was expressly affirmed in the Succession of Story, 3 Ann. 502.

In this manner the decisions we have cited are made perfectly harmonious with the provisions of the Civil Code, which have been interpreted as *requiring,* in such cases as the instant one, the appointment of an administrator. In this manner subsequent jurisprudence, permitting the appointment of an administrator or curator, in *no case,* unless some emergency required it, may be reconciled with the Civil Code and the adverse opinions referred to.

Reference to such of those adverse cases as have been *since* decided, will show that no mention is made of Bryan vs Atchinson, nor of C. P. 976.

In our opinion, the views entertained by the Court, as expressed in Erwin vs. Orillion, have been so completely overborne by the opinions of their successors in Flower vs. O'Connor and Bryan vs. Atchinson, as not to require that it should be any more specifically overruled. It is quite sufficient for us to say that we are in perfect accord with the latter, and are of opinion that it is a conservative doctrine, and one that tends to simplify and facilitate the settlement of successions and to reduce the cost to a *minimum,* and at the same time to deprive the creditors of neither security or safeguard.

Under the operation of this rule there is no impediment in the way of the heirs of the succession of Adèle Lamm. With the proper reservation being made, they may liquidate their demands against the succession of Dalsheimer, by suit or otherwise, without incurring the risk or responsibility they seem to apprehend. Having no interest in the succession of the latter, except that of creditors, nor in that of the former, except that of heirs, the way is easy to the accomplishment of the object they seem to have in view.

Rehearing refused.