(102 So. 590)

No. 25664.

## FONTENOT et al. v. FONTENOT et al.

(June 27, 1924. Rehearing Denied by Whole Court Jan. 5, 1925.)

*(Syllabus by Editorial Staff.)*

**1. Husband and wife ⬪276(1)—Administration of two communities, of which deceased husband was head in administration of his succession, held proper.**

Where deceased husband had been twice married and was head and master of two communities, both indebted so that an administration of both was necessary, it was legal to administer both communities in his succession.

**2. Husband and wife ⬪248—Community of acquêts and gains held to exist notwithstanding antenuptial contract; "otherwise."**

Community of acquêts and gains *held* to exist though parties, each of whom had been previously married, made antenuptial contract, which, after describing property owned by each in community with their children by their first marriages, recited that such property should be excluded from community between them as well as all other property received by them, "by succession, donation, or otherwise"; "otherwise" as so used meaning property acquired by either spouse with separate funds or in any other manner as would make it separate *property under the law.*

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Otherwise.]

**3. Husband and wife ⬪276(6)—Administratrix of husband's succession held entitled under statute to individually purchase property which deceased held in community with children by prior marriage.**

Under Civ. Code, art. 1146, prior to its amendment by Act No. 197 of 1912, prohibiting a. curator of vacant successions from purchasing property intrusted to his administration, but permitting such purchase when curator, executor, or administrator was surviving partner in community of deceased, a surviving wife administering succession of her deceased husband might individually purchase property composing part of such succession which deceased held in community with children by prior marriage of which community she was not a member.

Appeal from Sixteenth Judicial District Court, Parish of Evangeline; B. H. Pavy, Judge.

Suit by Adrien B. Fontenot and another against Adam B. Fontenot and others. Judgment for plaintiffs, and defendants appeal. Judgment annulled and set aside, with directions that plaintiffs' demand be rejected.

See, also, *156 La. 844, 101 So. 218; 156 La. 848,* 101 So. 219; 156 La. 849, 101 So. 220.

J. R. Pavy, of Opelousas, for appellants.

Peyton R. Sandoz, of Opelousas, for appellees.

By Division C, composed of Justices OVERTON, ST. PAUL, and THOMPSON.

OVERTON, J. Plaintiffs, Adrien B. Fontenot and Alma B. Fontenot, wife of Lastie Manuel, are the sole issue of the marriage of Thomas B. Fontenot and Lucile Cormier. Lucile Cormier died in 1877, and in the year following her death, her husband contracted a second marriage, marrying Elodie Young, widow of Francois B. Fontenot. The defendants in this suit are the issue of both marriages contracted by Elodie Young.

Prior to their marriage, Thomas B. Fontenot and Elodie Young, by notarial act, entered into a contract, in which, among other things, they declared what property each owned in common with his or her minor children. It was declared in this contract that the tract of land involved in this litigation was owned by Thomas B. Fontenot in common, or in the language of the instrument, "in community," with his minor children, Adrien and Alma Fontenot, the plaintiffs herein.

Thomas B. Fontenot died in 1887. His widow, Elodie Young, was appointed administratrix of his succession. For the purpose of paying debts, she obtained an order of court, of date October 6, 1887, authorizing her to sell at public auction all of the property of the succession, except certain property unnecessary to mention, and a commission

was issued directed to her, as administratrix, or to any duly qualified auctioneer, accordingly.

The property of the succession was advertised for sale by the administratrix; and, on November 8, 1887, it was cried by Théophile Fontenot, acting for the administratrix, and the property in which plaintiffs claim an interest was adjudicated to Elodie Young. Hence, the administratrix, in her individual capacity, became the purchaser of the property here involved.

In 1891, the administratrix filed her final account, which, in due course, was regularly homologated by judgment of court. It appears from this account that the succession was insolvent. It also appears from it that the administratrix paid the dative tutor of plaintiffs, who were then minors, $225, in discharge of the paraphernal claims of their mother, Lucile Cormier, deceased, against Thomas B. Fontenot. Hence, it appears that the community of acquêts and gains that existed between Thomas B. Fontenot and his first wife was indebted at the time of his death.

Immediately after the succession sale, Elodie Young went into actual possession of the property purchased by her and retained possession until her death, which occurred, we infer, not very long prior to the institution of this suit.

After the death of Elodie Young, her children, of both her first and second marriage, commenced proceedings to effect a partition of the property. Shortly after those proceedings were commenced, plaintiffs instituted this suit. They allege that they are the owners of a two-thirds undivided interest in the tract, which we have described as the one purchased by Elodie Young at the succession sale. They further allege that they inherited an undivided half interest in it from their mother, Lucile Cormier, and an undivided one-sixth from their father, Thomas B. Fontenot, making in all a two-thirds undivided

157 La.—17

interest inherited by them. They also allege that the adjudication to Elodie Young of the land purchased by her at the succession sale is null and void, for the reason that it was made in contravention of a prohibitory law. They also sue for a two-thirds interest in the revenues produced by the property. They pray that the adjudication to Elodie Young be annulled; that they be decreed to be the owners of a two-thirds undivided interest in the property; and that they have judgment for a two-thirds interest in the revenues produced by it.

Before answering plaintiffs' demand, defendants filed pleas of prescription, pleading, first, the prescription of 5 years, provided by article 3543 of the Civil Code, in bar of plaintiffs' attack upon the adjudication made to Elodie Young, and then the prescriptions of 10 and 30 years acquirendi causa. Defendants then answered, denying the alleged nullity of the adjudication made to Elodie Young, and averring, in effect, that they, as the heirs of Elodie Young, are the owners of the property, and denying all liability for rents and revenues, and prayed that plaintiffs' demand be rejected. The court below overruled the pleas of prescription filed by defendants and allowed plaintiffs' demand in full.

It is not disputed that the community of acquêts and gains, established by law, existed between Thomas B. Fontenot and Lucile Cormier. Assuming, for the moment, that a community of acquêts and gains existed between Thomas B. Fontenot and Elodie Young, then it becomes manifest from the proceedings had that two communities, both of which centered, as it were, in Thomas B. Fontenot, as their head and master, were administered in his succession, and that property belonging to both communities was sold therein. Hence, the question presents itself as to the right to pursue the course adopted of administering both communities in the succession of Thomas B. Fontenot, and of

selling the property therein as the property of his succession. In Lawson v. Ripley, 17 La. 248, this court said:

"The succession of the husband is therefore so far connected with the community as to form together at the time of his death an entire mass called his estate, which is not only liable for the payment of the common debts, but also for the portion of the wife or her heirs to the residue, if they have not renounced."

In the Succession of Lamm, 40 La. Ann. 312, 4 So. 53, quoting from Flournoy v. Flournoy, 29 La. Ann. 741, it was said:

"Where the husband and survivor of the community dies without having administered the succession of the wife, of which he had the usufruct, his heirs being also the heirs of his wife, the two successions may be settled and distributed among the heirs *in his succession alone*," etc.

It will be observed that in the Lamm Case, the husband had the usufruct of the succession of the wife, and that the heirs of the husband were also the heirs of the wife, whereas, in the case before us, it appears that Thomas B. Fontenot had lost, by his second marriage, the usufruct on his deceased wife's half of the community that existed between him and her during her lifetime, and moreover, that all of the heirs of Thomas B. Fontenot were not the heirs of his first wife, but only two of them—the plaintiffs herein. It also appears that in the Lamm Case only one community was involved in the administration, whereas in the case at bar there were two. However, whether or not the husband, whose succession has been opened, enjoyed the usufruct of the wife's half of the community, at the time of his death, certainly cannot affect the right to administer the succession of the wife in that of the husband alone, and, therefore, that feature of the Lamm Case, and of the case which it cites, may be regarded as an immaterial one. Also, as to whether the heirs are the same or not, may be likewise regarded as an immaterial feature. The only reason that there could be for exacting that the heirs be the same would be to avoid complications, but, as a general rule (and such was the case in the Succession of Thomas B. Fontenot), the right of all concerned can be as well protected under one administration as under two, and the procedure thereby simplified. The opinion in the Lamm Succession rests, in reality, upon the principle that the administration of the succession of the husband involves the administration of the community of which he was head and master, and it is in support of that principle that we cite the case. As the administration of the succession of the husband involves that of the community, it follows, we think, that where he was head and master of two communities, and both are indebted, the administration of his succession involves the administration of both communities.

[1] In the case before us, the community that existed between Thomas B. Fontenot and Lucile Cormier was indebted, and the one that existed between him and Elodie Young was also indebted. Hence, an administration of both communities was necessary in order to pay the debts of each, and therefore, upon Thomas B. Fontenot's death, it was legal to administer both communities in his succession, for both, as it were, centered in him as their head and master.

[2] In the preceding paragraphs we have assumed that a community did exist between Thomas B. Fontenot and his second wife, Elodie Young. It is now necessary to decide whether or not one existed between them, not only because of what we have said in connection with that assumption, but also because of the bearing of the question of community vel non on the next point to be decided. Plaintiffs contend that no community existed between Fontenot and his second wife. They base this contention on the antenuptial contract entered into between the two, and referred to above. In our view that contract does not support plaintiffs' conten-

tion. The instrument, after describing the property owned by Fontenot in community with the children of his first marriage and the property owned by Elodie Young in community with the children of her first marriage, recites:

"The parties to this act mutually agree that the property hereinbefore described and appraised shall be excluded from *the community that shall exist between them* as well as all property that shall be received by either of them hereafter, either by succession, donation or otherwise. Also the appearers declared that they nor their property shall not (sic) be in any way responsible for the debts due by either prior to their intended union. That *the acquêts or gains shall be disposed of at the dissolution of their union* as provided for in the Civil Code of Louisiana." (Italics ours.)

The view of plaintiffs seems to be that the word "otherwise," found at the close of the first sentence in the foregoing quotation, should be given its broadest possible meaning, so that not only property received by succession or donation should be considered the separate property of the spouse to whom it might fall, or to whom it might be given, but that property acquired in any other manner should be deemed the property of the spouse by whom it was acquired, and, hence, it is argued that it was the intention that there should be no community, and that none existed between the spouses. However, to hold that no community existed between them would be to defeat their declarations in the contract, for, in the very sentence in which the word "otherwise" is found, it is declared that there shall be a community of acquêts and gains between the intended spouses, and again in the last sentence of the quotation it is expressly provided how the matrimonial community shall be disposed of upon the dissolution of the marriage. The meaning intended to be conveyed by the word "otherwise," in the foregoing quotation, was that property which should be acquired by either spouse with his or her separate funds, or in any other manner, under such circumstances, as would make the property acquired separate, under the law, should be deemed the separate property of the spouse acquiring it, as would property received by "succession" or "donation," which words precede "otherwise." Hence, we think it clear that a community of acquêts and gains did exist between Thomas B. Fontenot and Elodie Young, though we think it equally clear that the land involved in this litigation did not belong to that community.

[3] The contention of plaintiffs that the adjudication to Elodie Young of the tract of land, in which they claim an interest, is null and void, is based on article 1146 of the Civil Code, which at the time of said adjudication, this being prior to the amendment of the article by Act No. 197 of 1912, read as follows:

"Every curator of vacant succession or of absent heirs is prohibited from purchasing by himself, or by means of a third person, any property, movable or immovable, intrusted to his administration, under the pain of nullity and responsibility for all damages caused thereby.

"Any executor, administrator, curator of vacant successions, or tutor, may purchase at the sale of the effects of the deceased, whose estate he may represent, when he is the surviving partner in the community or ordinary partnership, or an heir or legatee of the deceased; and all purchases so made shall be considered as valid and binding as though made by any disinterested party, and shall have full force against minors, interdicted persons, and married women."

The foregoing article permits the surviving spouse in community, although administrator of the succession of the deceased, to bid at the succession sale of his or her effects. While Elodie Young was surviving spouse in community, as well as administratrix of the succession of her husband, yet she was not a member of the matrimonial community to which the property belonged that she purchased. The question therefore is, did the fact that she was administratrix of his succession incapacitate her to legally purchase

the property? While this court has on various occasions been called upon to apply article 1146 of the Code, yet it has never had occasion to apply it to facts similar in all respects to those presented in this case. It has been held, in effect, however, that the surviving spouse in community, although administrator, may purchase at the succession sale of the separate property of the deceased spouse, and that ruling, in our view, aids materially in determining the question now under consideration. We refer to the case of Aicard v. Daly, 7 La. Ann. 612. In order, however, to appreciate the full force and effect of the ruling therein, it is necessary to consider the case in connection with a preceding one, that is, in connection with the case of Neda v. Fontenot, 2 La. Ann. 782. It was held in the Neda Case that the fact that an administrator charged with the duty of selling property belonging to the succession under his administration, purchased property at the succession sale, although for another, rendered the purchase illegal. The reason for this ruling, though not stated in the opinion, is manifestly because, since the administrator could not purchase for himself at the sale, he could not purchase for another. In the Aicard Case it appears that the separate property of the deceased wife was offered at probate sale for the purpose of paying her debts and of settling her succession. Her husband was curator of her succession. He purchased property at the sale for another. The court sustained the purchase, and said:

"The curator, being the husband of the deceased, had authority to purchase, even for himself, at the probate sale,"

—and cited the Act of 1840, page 123, of the Acts of that year, the first and pertinent section of which has since been incorporated in article 1146 of the Civil Code, quoted supra, and constitutes the second paragraph of that article as quoted above, the quotation being as that article read prior to its amendment by Act 197 of 1912. As the court cited the act of 1840 (Acts 1840, p. 123) which permits the surviving spouse, in community, although curator or administrator, to purchase at the succession sale, it is manifest that it was because the curator was such spouse, and was, therefore, permitted to purchase, that the court sustained the sale, and did not rule as it had in the Neda Case. If, therefore, the surviving spouse, although administrator or curator, may legally purchase the separate property of the wife at her succession sale, because of the fact that he is surviving spouse in community, then for the same reason the surviving widow in community, although administratrix of her husband's succession, may purchase property belonging to another community, of which she was not a member, involved in the administration of his succession. It is the fact that the administratrix is the surviving widow in community that gives her the right to purchase, and not whether the property purchased belonged to the community of which she was a member, or to the separate estate of her husband, or to another community involved in the administration of his succession, of which he had also been head and master.

For the foregoing reasons, we are of the opinion that the purchase made by Elodie Young is valid. As we entertain that opinion it is unnecessary that we pass on the pleas of prescription filed.

For the reasons assigned, it is ordered, adjudged, and decreed that the judgment appealed from be anulled and set aside, and that plaintiffs' demand be rejected at their costs.

Rehearing refused by the WHOLE COURT.