Eugene F. THIELENHAUS, Plaintiff–
Appellee/Counter–Appellant,

v.

Charlene F. THIELENHAUS, Defendant–
Appellant/Counter–Appellee.

No. 80048.

Supreme Court of Oklahoma.

Jan. 31, 1995.

As Corrected Feb. 1 and 9, 1995.

**11.** See, deposition testimony, notes 1 & 3, supra.

Richard A. Wagner, II, Bradley A. Grundy, Richard A. Wagner, II & Associates, Tulsa, for appellant/counter-appellee.

C. Clay Roberts, III, Richard D. Marrs, Helen H. Blake, Roberts, Marrs & Carson, Tulsa, for appellee/counter-appellant.

OPALA, Justice.

This certiorari presses for our decision two first-impression issues: (1) What portion, if any, of the in-marriage[1] increase in the hus-

1. We use the adjectival phrase "in-marriage" as a synonym for "during the marriage".

band's retirement fund is divisible as marital property? and if any be divisible, (2) What cut-off date should be set for valuation of this marital asset? We hold: (a) that the in-marriage enhancement (or growth) in the husband's retirement fund *which is attributable to . the employer's participatory payments* [2] or to either spouse's monetary contribution, skill or effort is a divisible marital asset, but any increase in the husband's separate (pre-marital) interest in that fund, produced by investment (managed by neither spouse), *appreciation, inflation, changing economic conditions or circumstances beyond the parties' control* is to be deemed the husband's separate property; and (b) the cut-off date to be set for valuation of the divisible marital interest in the fund is the date the nisi prius court reached this suit for trial that is now on certiorari review. Because the record is insufficient for this court to determine *the value of the divisible in-marriage enhancement component of the marital asset in the retirement fund,* we remand the cause for further proceedings.

# I

## THE ANATOMY OF LITIGATION

Eugene and Charlene Thielenhaus [husband and wife] had been married for ten years when the husband sought a divorce. Both parties brought separate property into the marriage. No children were born of the union. Each spouse was awarded his (or her) separate property; the marital assets were equitably divided.[3] The wife was awarded support alimony in the amount of $15,000 and an attorney's fee for trial-related services of $2,500. At the commencement of the proceedings the husband was 60 years old and had worked for Martin Tractor Com-

pany for nearly 40 years. He had participated in the company profit sharing retirement plan since 1960. The company retirement account, *managed as an independent fund,* consisted mainly of certificates of deposit, stocks and other investments. *Both the husband and the employer made annual contributions to the fund.* Neither spouse had any involvement in the management of this investment. The husband appraised his share of the fund's value on the *date of marriage* at approximately $76,733.75 and the *total* in-marriage increase, effective April 15, 1990 (which appears to be the husband-provided *date of separation* ), at approximately $317,-550.99.[4] Only $79,226.83 of the enhancement, the husband urged, constitutes divisible marital property. The wife, on the other hand, valued the conjugal portion of the pension fund (on *the date of trial* ) by subtracting the value of the fund on the date of marriage from the value on the date of trial to reach an approximate (total divisible fund enhancement) amount of $300,000. She claimed one-half of this sum as her share of the marital asset.

The trial court found that the wife was entitled to an equitable portion of the husband's profit-sharing and pension fund. It awarded her one-half interest in the marital component in that property, valuing her share at $50,000.00. *No exact valuation date was ever identified, either by the proof or by the judge's direction, and none appears on the record.* The wife appealed and the husband counter-appealed.

### The Court of Appeals' Pronouncement

#### A.

The wife argued on appeal that the trial court *erred in failing* (a) *to make* an equita-

---

**2.** The pension plan provided for periodic contributions from the employer. By "participatory payments" we mean those made by the employer as a contributor to the pension plan.

**3.** [A] *The wife was awarded:* (1) real property in Tulsa, Oklahoma ($70,000 with a mortgage of $21,185 and equity of $48,415); (2) 1978 Mercedes ($5,000); (3) 1986 Dodge Diplomat ($1,850); (4) personal property ($2,500); (5) Martin Tractor Retirement Account ($50,000); and (6) indebtedness of $24,500 for her medical bills and credit card debts. [B] *The husband was awarded:* (1) real property in Topeka, Kansas ($33,000 with a mortgage of $29,430 and equity

of $3,570); (2) 1977 Camper ($4,500); (3) Hesston Tractor ($9,000); (4) 1973 BMW Motorcycle ($1,000); (5) 1975 El Camino ($1,200); (6) Chevrolet Caprice ($7,000); and (7) personal property ($1,500); (8) Martin Tractor Retirement Account ($50,000). The trial court set aside to the wife her separate pre-marital property in Tulsa; the husband was awarded as his separate property certain industrial revenue bonds *as well as his separate interest in the retirement fund.*

**4.** The husband asserts that April 15, 1990 is the date he separated from his wife; the trial court ruled that May 8, 1990 (the day the petition was filed) is the date of separation.

ble allocation of the marital debt, (b) *to find* that the husband had "depleted" the marital estate by secreting some assets, (c) *to find* that certain industrial bonds are marital property, (d) *to award* sufficient support alimony, and (e) *to award* her a reasonable counsel fee. The Court of Appeals affirmed the trial court's resolution of all these disputed issues, holding that it is not clearly contrary to the weight of the evidence. *The correctness of the appellate court's pronouncement upon these issues is not before us now. None* is tendered for corrective relief by the husband's petition for certiorari.[5]

### B.

The wife next argued on appeal that the trial court erred in its distribution of the *divisible* portion of the enhanced value in the husband's retirement fund. The parties disagreed on both (a) the *method for valuation* of the jointly-acquired fund component and (b) the *valuation date* to be set for that asset's appraisal (i.e., whether its worth is to be calculated from the date of marriage to the date of separation *or* beyond this point to the date of trial). The husband's counterappeal urged error in the trial court's "overvaluing" the marital portion of the retirement fund. The Court of Appeals agreed with the latter contention and reversed this decretal element of nisi prius decision, directing that on remand the trial court (a) determine the value of the pension fund *at the time of marriage* as well as *at the time of trial* and (b) *treat the entire difference* between the two figures as a divisible asset of the marital estate. Because the appellate court was concerned that its pronouncement might have a significant impact upon the previously effect-ed nisi prius division of *other* spousal assets and upon the award of support alimony, its opinion directed the trial court to *reconsider on remand* both its alimony grant and the distribution of all joint assets.

The husband's certiorari challenges the appellate court's (a) view of what is the retirement fund's *divisible* in-marriage enhancement; (b) adoption of the wrong date for appraisal of the fund's *divisible* component; and (c) undue enlargement of post-remand proceedings to include reconsideration of the alimony grant and of the entire marital estate whose division was found to be clearly supported by the weight of the evidence.

### II

### THE DIVISIBILITY OF THE PENSION FUND'S ENHANCED VALUE

The husband asserts that *only those* in-marriage increases in the net worth of his retirement fund, which are attributable to the *personal* effort, skill or monetary contributions by either spouse, would constitute a *divisible* conjugal asset. He urges that any *enhancement* in the net worth *of the fund's pre-marital balance,* produced (a) by the growth of the fund's investment *managed by neither spouse* or (b) by appreciation, inflation, changing economic conditions or circumstances beyond the parties' control must be characterized as his *separate property,* even though the growth in value did actually occur during coverture.[6] The formula he fashions and tenders for determining the *non-divisible enhanced value of his separate property* (as distinguished from the *divisible* marital portion) is: (1) *multiply* the fund's beginning balance ($76,733.75, rounded off to $76,734)[7]

5. *Ford v. Ford,* Okl., 766 P.2d 950, 954 (1989); *Johnson v. Wade,* Okl., 642 P.2d 255, 258 (1982) (overruled in part on *other* grounds by *Hough v. Leonard,* Okl., 867 P.2d 438 (1993)).

6. The *modern* meaning of the law French term "coverture" is *"married state."* J.H. Baker, MANUAL OF LAW FRENCH at 81 (2d ed. 1989). In its *original* common-law meaning, the term *coverture* denotes a cluster of disabilities imposed on a *feme covert* (married woman). *United States v. Yazell,* 382 U.S. 341, 351, 86 S.Ct. 500, 506, 15 L.Ed.2d 404 (1966). *See also* BLACK'S LAW DICTIONARY at 330 (5th Ed.1979) (where coverture is defined as "[t]he condition or state of a married woman;" "[s]ometimes used elliptically to describe the legal disability which formerly existed from a state of coverture"); *Osborn v. Horine,* 19 Ill. 124, 125 (Ill.1857).

7. The Martin Tractor Company Profit Sharing Plan is valued annually every June 30th. The husband determined the beginning balance of the fund at the date of marriage (March 6, 1980) by the following formula: (a) subtract the June 1979 balance ($66,888) from the June 1980 balance ($79,280), arriving at an increase of $12,392, (b) divide that amount by 365 days, arriving at a

at the date of marriage (March 6, 1980) (2) *times* the average earning of the pension account from 1980 to 1991 (12.36%, rounded off to 12%) and (3) *compound annually* the interest until the date of separation (April 15, 1990), arriving at a total of $238,324.16 (the non-divisible enhanced value of his separate property), (4) subtract that amount from $317,550.99 (the value of the fund on April 15, 1990) to arrive at a *divisible marital asset of $79,226.83.*[8] The latter figure, the husband argues, represents the *divisible* enhanced value of the fund and urges that the distinction between enhanced/separate (non-divisible) and enhanced/marital (divisible) property is consistent with statutory law, 43 O.S.1991 § 121,[9] and extant jurisprudence.[10]

The wife asserts the appellate court correctly determined that the *total in-marriage increase in the retirement fund* (the growth of the fund) is *divisible* marital property. She makes no claim to the retirement fund's *non-divisible pre-marital* balance, apparently *conceding* on certiorari that it had a value of $76,733.75.[11] The wife claims an equal share of the *total in-marriage increase* (or enhancement) in the retirement fund for the period between the *date of marriage* and the *trial date.*

■■■ Section 121[12] requires a fair and equitable division of property acquired during the marriage by the joint industry of the husband and wife. Jointly-acquired property is that which is accumulated by the *joint industry* of the spouses during the marriage.[13] Separate property includes, *inter alia,* property owned by a spouse before the marriage, which retains its separate status during coverture because it is maintained in an uncommingled state[14] as a spouse's indi-

---

8. The divisible enhanced value of the husband's retirement fund was determined by this formula: $79,734 × 12% + [×] (annual compounded interest) (from the period from the date of marriage to date of separation) = $238,324.16; $317,550.99 − $238,324.16 = $79,226.83.

9. The pertinent terms of 43 O.S.1991 § 121 are: "When a divorce is granted ... [t]he court shall enter its decree confirming in each spouse the property *owned by him or her before marriage* and the undisposed-of property acquired after marriage by him or her in his or her own right.... As to such property, whether real or personal, which has been acquired by the parties jointly during their marriage, whether the title thereto be in either or both of said parties, the court shall make such division between the parties as may appear *just and reasonable,* by a division of the property in kind, or by setting the same apart to one of the parties, and requiring the other thereof to be paid such sum as may be just and proper to effect a fair and just division thereof. The court may set apart a portion of the separate estate of a spouse to the other spouse for the support of the children of the marriage where custody resides with that spouse." (Emphasis added.)

The 1992 amendment of § 121 has no effect on this litigation.

10. The husband relies upon *Ford, supra* note 5; *Templeton v. Templeton,* Okl., 656 P.2d 250 (1983); *Kirkland v. Kirkland,* Okl., 488 P.2d 1222, 1227 (1971); *Moyers v. Moyers,* Okl., 372 P.2d 844 (1962).

11. The wife states in her supplemental brief that "[p]ursuant to Oklahoma law, Appellee can only establish that the retirement account balance of $76,733.75 (the clear balance at the time of the marriage) was separate property." Supplemental Brief at 13. But see (a) Supp.Br., page 3, where she states that "at the time of the parties' marriage, the retirement account had a value of between $76,182 and $73,084" and (b) Supp.Br., page 3, n. 2, where she goes on to say that according to her calculation the "jointly-acquired interest in the retirement account is $306,916 with an additional $73,084 of the account being [the husband's] separate property."

12. For the terms of 43 O.S.1991 § 121, see *supra* note 9.

13. *Willhams v. Williams,* Okl., 428 P.2d 218, 222 (1967); *Longmire v. Longmire,* Okl., 376 P.2d 273, 275 (1962).

14. *When commingling, as in this case, is not brought about by the act of a spouse intermixing differently owned property beyond the possibility of tracing, but rather by the inherent nature of the assets' imposed management in the hands of a third party, each component retains its legal character as separate or spousal property. See, e.g., (1) Marriage of White, 521 N.W.2d 874, 876 (Minn.*

vidual property.[15] Where, as here, a spouse brings separate property to the marriage, its increased or enhanced value, produced by investment managed by neither spouse or by *appreciation, inflation, changing economic conditions, or circumstances beyond the parties' control,* cannot be treated as a divisible marital asset unless, of course, there be proof that the increase resulted from efforts, skills or funds of either spouse.[16] The non-owning spouse's *interest in the increased separate estate of the other, when established through efforts, skills or expended funds, stands confined to the enhanced value of that separate property.*[17] The burden is upon the non-owning spouse to show that the enhancement is the result of either spouse's endeavors.[18]

■■■ In *May v. May*[19] the court fashioned a formula for determining the non-owning spouse's' quantum of interest in the other's separate property. The three critical value-assessment elements identified there are: (a) the cost/value of the separate property; (b) the non-divisible in-marriage enhancement caused by inflationary factors or other marketplace forces producing appreciation in price levels (unrelated to efforts of labor); and (c) the increase in value, if measurable by proof, which is due to personal efforts, skills or expended funds of the spouses' labor. The non-owning spouse would be entitled to any quantifiable increase that may be ascribable, *not to mere appreciation in value, but purely to efforts of labor and expenditure of funds.* It is the latter increase alone that is reachable for an equitable division as a joint spousal interest. The *May* formula was bottomed on *Moyers*[20] which holds that enhancement in value of a spouse's separate estate, attributable to personal efforts of labor by the other, constitutes divisible marital property. *Carpenter v. Carpenter*[21] teaches that a pension which has been *"purchased* through *joint efforts* of the spouses *to the extent* that it has been *acquired or [has become] enhanced* during the marriage" is divisible marital property.[22] Pension rights which result *from employment occurring before and after marriage* partake of dual (separate and marital) property character.[23] Like any other asset which draws from both sources,[24] the retirement pension fund *must be apportioned* before the quantum of its conjugal component may be isolated and then divided between the parties.

■■■ The husband's formula for separating the divisible in-marriage enhanced portion of the retirement fund—by ascertaining the value of his non-divisible separate property (the pre-marital fund balance and its enhanced value) and then subtracting that

App.1994) (the court's syllabus states that "[u]pon dissolution, a spouse is entitled to receive the original nonmarital asset and any passive appreciation in value not attributable to marital efforts"; the court held that a *portion of growth* in the husband's nonmarital retirement plan and annuity, not attributable to efforts of the marital partnership, was the "result of passive appreciation of pre-marital investments and was correctly categorized by the trial court as nonmarital property"); (2) *Marriage of Phillips,* 229 Ill.App.3d 809, 171 Ill.Dec. 501, 507, 594 N.E.2d 353, 359 (1992) (the court, which rejected the husband's argument that in-marriage contributions made to the wife's savings plan were commingled with nonmarital contributions to create a marital asset, held that the savings plan retained its original status as nonmarital property and that only the in-marriage contributions and their growth qualified as a marital component of the plan).

15. *Mothershed v. Mothershed,* Okl., 701 P.2d 405, 408–411 (1985); *Templeton, supra* note 10 at 252; *May v. May,* Okl., 596 P.2d 536, 539 (1979).

16. *Templeton,* supra note 10 at 252; *Moyers, supra* note 10 at 846.

17. *Templeton, supra* note 10 at 252 (citing *Moyers, supra* note 9 at 846); *Williams, supra* note 13 at 222; *see also* Robert G. Spector, *Apportionment Of The Increase In Value Of Separate Property During Marriage: The Effect Of Ford v. Ford,* 59 O.B.J. 3683 (1988).

18. *Hardaway v. Hardaway,* Okl., 872 P.2d 395, 398 (1994); *Templeton, supra* note 10 at 252.

19. *May, supra* note 15 at 539.

20. *Moyers, supra* note 10 at 846.

21. Okl., 657 P.2d 646, 651 (1983).

22. *Carpenter, supra* note 21 at 651 (emphasis added).

23. *Carpenter, supra* note 21 at 651.

24. *Carpenter, supra* note 21 at 651.

from the total value of the retirement fund at the cut-off point—is not, under the facts of this case, an unreasonable method for calculating the quantum of his interest.[25] Moreover, the approach he counsels is quite consistent with the marital-property regime laid down in *Moyers,*[26] *Templeton*[27] and *May.*[28] The trilogy teaches that any in-coverture enhancement in a spouse's separate asset, which is effected *without* any effort on the part of the other spouse does not qualify as *divisible* marital property. The wife's quest for one-half of the *total enhanced value* would call upon us to abrogate this State's long-standing regime of equitable distribution and to embrace the community property's concept of "acquets and gains."[29] *This may not be done sans legislative authority.*[30] While we do not disapprove of the computation method pressed by the husband, we recognize that *another approach* might be just as, or even more, equitable in valuing this conjugal interest. There is always room for nisi prius exercise of discretion to achieve a fair and equitable result.[31] This case is no different.

The proceedings to be conducted on remand shall stand confined to the *single* issue of ascertaining the extent of the *marital component* in the husband's retirement fund and to the *equitable*[32] division of that component *alone.* All other provisions in the trial court's decree shall stand *undisturbed.* On remand the trial judge is *not* precluded from utilizing, for value assessment of the marital component in the husband's pension fund, some other appraisal method which is found to be equally, or even more, equitable and consistent with the generally accepted accounting practices.

## III

## THE DATE FOR THE VALUATION OF THE ENHANCEMENT IN THE HUSBAND'S PENSION FUND

The husband challenges ·the trial court's valuation of the jointly-acquired portion of the retirement fund. He asserts that the *divisible* portion of the fund should have been valued at $79,226 rather than $100,000. He arrived at the lower figure by using the parties' *separation date* (which he asserts is

25. For a discussion of the divisibility of pension or retirement benefits in other states, see Annot., Pension or Retirement Benefits as Subject to Award or Division by Court in Settlement of Property Rights Between Spouses, 94 ALR3d 176 (1979).

26. *Moyers, supra* note 10 at 846.

27. *Templeton, supra* note 10 at 252.

28. *May, supra* note 15 at 539.

29. *Fontenot v. Fontenot,* 157 La. 511, 102 So. 590, 592 (1924). In Texas the term used for community assets is "the ganancial property". *Stephens v. Stephens,* 292 S.W. 290, 292 (Tex.Civ. App.1927).

30. The marital ownership regime known as the community property law, a creature of *Franco–Spanish* code sources, was *enacted* in Oklahoma in 1939, O.S.L.1939, pp. 356–360, §§ 1–15 (32 O.S.Supp.1939 §§ 51–65), then *modified* in 1945, O.S.L.1945, pp. 118–121 §§ 1–16 (32 O.S.Supp. 1945 §§ 66–82) and *finally repealed* in 1949, O.S.L.1949, p. 229, § 1, to be effective June 2, 1949. Section 2 of the repealing legislation (43 O.S.1991 § 215) addresses those rights that had vested while the community property law was in effect. It provides that any spouse could, within one year from the effective date of the repealing

act (a) enter into recordable agreements specifying his/her respective rights in the community property or (b) have those rights judicially determined. The repeal *returned* this State to her earlier system, typical of jurisdictions with Anglo–American legal tradition, in which the spouses' ownership share in their "jointly acquired property" during the marriage is *ascertained* and *"equitably distributed"* as an incident of a divorce action. For a history of the community property law's brief appearance in Oklahoma and of its repeal's aftermath, see *Hiskett v. Wells,* Okl., 351 P.2d 300, 302–303 (1960); *Catron v. First National Bank & Trust Co. of Tulsa,* Okl., 434 P.2d 263, 269–271 (1967); *Murrah v. Wiseman,* 449 F.2d 187, 188–189 (10th Cir.1971). Since 1949 there has been *no* legislative effort at reintroducing into Oklahoma any form of community property regime. Section 4(d) of the Uniform Marital Property Act [UMPA] provides that *income received* during the marriage from one spouse's separate property is a *marital asset. The provisions of UMPA, which is not in force in this State,* would support the wife's claim for her share of the *total in-marriage enhancement* of the husband's pension fund.

31. *Gamble v. Gamble,* Okl., 477 P.2d 383, 391 (1970).

32. *See* 43 O.S.1991 § 121, *supra* note 9.

April 15, 1990) as the cut-off point for determining the value of the marital component to be computed. The wife urges that the valuation date should be the *date of trial.*

At the time of trial (February 24 and 27, 1992), the husband, although he had not yet retired, was eligible to draw from the retirement fund. According to him, the company allows pensions to be drawn once a year. If he had retired on July 1, 1992, he would not have received his initial payout until one year from the next September (September 1993). This delay is imposed to give the company time to liquidate investments. The record is not clear whether he would have been entitled to a lump-sum payment or to installments due over a period of time.

Before any price tag can be placed upon the *divisible* retirement component, the trial court must first establish its valuation date. Oklahoma jurisprudence provides *no* definitive rule to be used for the appraisal of marital property. The issue pressed is of utmost importance since in complex, "megabuck" urban divorce contests protracted pre-trial proceedings and other calendar delays often produce a significant interval between the commencement of an action and the time of trial. During the interim, property values might not—and probably would not—remain constant.

■ In other jurisdictions, in which the equitable distribution system for spousal property is in force, there has been no clear judicial consensus on the cut-off time for valuation of marital assets. In some states the date of trial is used.[33] In others, courts utilize the date the petition was filed [34] or the divorce is granted.[35] Some states have approved trial court decrees that anchor the value of marital property to the date of separation or specifically recognize that temporal point as a benchmark date.[36] Many courts have declined to fashion a rigid rule, holding the date of valuation is to be determined by the trial court *after* due consideration to all of the circumstances in a case.[37] *We prefer to afford the litigants flexibility of the latter approach.* While the cut-off date *must* always be tailored to suit the circumstances of a case, the court should, in the interest of certainty, set a reasonable temporal point for valuing *each* marital asset, making proper allowances for different types of conjugal property.

■ Trial courts should generally be free to choose the most appropriate appraisal date for the pension interest like that in contest here. Because nearly three years have lapsed since the *February 27, 1992* trial hearing, we limit the court's discretion *in this case* by holding that *for this post-remand proceeding* the valuation point of the marital component in the husband's pension *must* be anchored to the date of original trial (February 27, 1992).

In equity cases we may generally render that judgment which the trial judge should have rendered.[38] We do affirm today all the in-kind and monetary nisi prius awards *except only that which affects the retirement fund's apportionment.* The trial court's

**33.** *See, e.g., Walter W.B. v. Elizabeth P.B.,* 462 A.2d 414, 415 (Del.Super.1983).

**34.** *Povosky v. Povosky,* 124 A.D.2d 1068, 508 N.Y.S.2d 722, 723 (1986); *DiPietro v. DiPietro,* 193 N.J.Super. 533, 475 A.2d 82, 85 (1984).

**35.** *Cotter v. Cotter,* 58 Md.App. 529, 473 A.2d 970, 974 (1984); *Wilen v. Wilen,* 61 Md.App. 337, 486 A.2d 775, 779 (1985).

**36.** *Braderman v. Braderman,* 339 Pa.Super. 185, 488 A.2d 613, 618 (1985); *King v. King,* 332 Pa.Super. 526, 481 A.2d 913, 915 (1984).

**37.** *See, e.g., Berish v. Berish,* 69 Ohio St.2d 318, 23 O.O.3d 296, 432 N.E.2d 183, 184–185 (1982); *Bollenbach v. Bollenbach,* 285 Minn. 418, 175

N.W.2d 148, 159 (1970); *Curylo v. Curylo,* 104 Mich.App. 340, 304 N.W.2d 575, 580 (1981); *Perlmutter v. Perlmutter,* 523 So.2d 594, 595–596 (Fla.App.1987). In Montana each situation is considered on a case-by-case basis because the Supreme Court is unwilling to create a standard rule for valuation. *See, e.g., In re Marriage of Hunter,* 196 Mont. 235, 639 P.2d 489, 491 (1982); *Lippert v. Lippert,* 192 Mont. 222, 627 P.2d 1206, 1208 (1981) (the court held that no single event in the dissolution process establishes the date for valuation of marital assets, because a court might need to use different valuation dates for different properties); *cf. In re Marriage of Wagner,* 208 Mont. 369, 679 P.2d 753, 757 (1984).

**38.** *Matter of Estate of Bartlett,* Okl., 680 P.2d 369, 374 (1984).

post-remand monetary award for the wife's share of the marital component in the husband's retirement fund shall operate with effect from the date of its post-remand entry.[39] Incomplete appraisal proof requires that we remand this cause for the retirement interest's nisi prius re-valuation. The critical evidentiary deficiency disclosed by the record comprises the absence of: (1) the *exact valuation date* ordered and used and (2) the fund's *total value on the critical established appraisal date*. The trial court set the sum of $50,000 as the wife's one-half marital interest in the pension fund's *divisible* enhancement, but the record is utterly *silent* on how that figure came to be determined. The February 27th valuation date, ordered by this pronouncement to be used upon remand, calls for appraisal evidence which targets that temporal point. The proof must (1) *include* the critical pension plan financial reports and (2) *identify* each of the sources which contributed to the fund's in-marriage *appreciation* in value as well as (3) *show* the amount of in-marriage monetary *contributions* by the husband and that of the employer's participatory payments.[40] If the post-remand valuation is to withstand appellate scrutiny, the proof must overcome the present deficits in the appraisal evidence of record. Accordingly, we remand the cause for further proceedings in which (a) February 27, 1992 is to be used as the *valuation date* of the pension fund and (b) the extent of the husband's *nondivisible separate* property in the retirement fund as well as the marital estate's *divisible interest* must be computed by some equitable and acceptable accounting method and (c) on re-appraisal, the trial court shall divide *equitably*[41] the retirement fund's *divisible* component of the *in-marriage enhancement*.

# IV

## THE WIFE'S APPEAL–RELATED ATTORNEY'S FEE QUEST

 The wife claims *in this court* the sum of $9,061.17 in appeal-related attorney's fee and costs because "she prevailed in the Court of Appeals on the retirement fund issue." Counsel fees on appeal, much like taxable costs, may be judicially authorized *in the case in which the services were performed*.[42] Widespread courthouse folklore—that either the *prevailing party* in the case or the *principal spousal provider* is under a duty to pay counsel fees in matrimonial litigation—is *not* the law in Oklahoma. *It is a hard-to-repress legal myth*. The terms of 43 O.S.1991 § 110 plainly provide that *either spouse* may be required to pay "reasonable expenses of the other in the prosecution or

---

**39.** Post-award interest accrues separately upon *each* discrete equity award. *Vilbig Const. Co. v. Whitham*, 201 Okl. 86, 201 P.2d 922, 932 (1949). Interest runs on all monetary awards that stand affirmed by today's opinion from the date judgment was originally entered (*id.* 201 P.2d at 932); but interest will not accrue on the *vacated* item of monetary award. Today's opinion sets aside, for want of evidentiary support, the entire separable retirement-fund award. *It does not modify or reduce it*. This distinguishes the present case from one where a monetary award is affirmed as modified by reduction in its amount. In the latter instance post-judgment interest *on the reduced portion should indeed be allowed* to run from the date of the original adjudication. *See Missouri–Kansas–Texas Railroad Co. v. Edwards*, Okl., 401 P.2d 303, 304–306 (1961).

**40.** For the term *"participatory payment"*, see *supra* note 2.

**41.** *See* 43 O.S.1991 § 121, *supra* note 9.

**42.** The terms of 43 O.S.1991 § 110 provide in pertinent part:

"... [O]n granting a divorce in favor of the wife or the husband, or both, the court may require the husband or wife to pay such reasonable expenses of the other in the prosecution or defense of the action as may be just and proper considering the respective parties and the means and property of each...."
The quoted language *was amended in 1992*, O.S.L.1992, Ch. 252, § 1. Its change has *no effect* on this case.
Rule 1.31(a)(5), Rules on Perfecting a Civil Appeal, 12 O.S.1991, Ch. 15, App. 2, provides in pertinent part:
"(a) For the purposes to be stated the trial court does retain jurisdiction in the case after a petition-in-error has been filed in this court:

\* \* \* \* \* \*

(5) In matrimonial litigation, to award attorney fees for services rendered or to be rendered in connection with the appeal....
*Jones v. Jones*, Okl., 612 P.2d 266 (1980)."
*Chamberlin v. Chamberlin*, Okl., 720 P.2d 721, 727–728 (1986).

defense of the action as may be just and proper considering the respective parties and the means and property of each." Counsel-fee allowances, which *never* depend on one's status as prevailing party in the case, *must* be granted only to that litigant who qualifies for the benefit through the process of a *judicial balancing of the equities.*[43]

■ Property set apart to the wife consists of: (a) 2 vehicles ($6,850); (b) real estate (equity–$48,415); (c) one-half of the retirement fund's in-marriage enhancement ($50,000); and (d) personal property ($2,500). She was allocated the debt of $24,500. The husband received: (a) camper ($4,500); (b) tractor ($9,000); (c) motorcycle ($1,000); (d) 2 cars ($8,200); (e) personal property ($1,500); (f) real property (equity–$3,570) and (g) one-half of the retirement fund's in-marriage enhancement ($50,000).[44] The division of marital assets, considered with the debt allocation, resulted in a *net award of $83,265 to the wife and $77,770 to the husband.* The wife also received support alimony of $15,000 payable over 15 months at the rate of $1,000 a month as well as trial-related attorney's fee of $2,500.

Based on our careful consideration of the equities that affect these parties, we conclude that *each* should bear *its own* counsel-fee and other litigation expenses incident to the appeal and certiorari process. The trial court is not precluded from entertaining pleas for a counsel-fee award and for litigation expenses to be *connected with legal services to be rendered and expenses to be incurred in the proceedings upon remand.* These pleas should be brought *after* the post-remand evidentiary process has been concluded.

## SUMMARY

The enhanced value of a spouse's *separate* property produced (a) by investment managed by neither spouse or (b) by appreciation, inflation, changing economic conditions, or circumstances beyond the parties' control cannot be treated as a divisible marital asset unless, of course, there be proof that the increase resulted from efforts, skills or expended funds of either spouse. The cut-off date for valuation of divisible marital assets is to be determined by the trial court after due consideration of all the circumstances in a case. The trial court should set a reasonable date for valuing each marital asset, making proper allowances for different types of conjugal property.

Because nearly three years have lapsed since the trial date, we hold that in this case the valuation point for the marital component in the husband's pension must be anchored to the date of original trial (February 27, 1992). Incomplete appraisal evidence requires that we remand this cause for nisi prius re-valuation of the divisible marital component in the husband's retirement fund, to be computed by some equitable and acceptable accounting method approved by the trial court. On re-appraisal, the trial court shall equitably apportion the retirement fund's divisible portion of the in-marriage enhancement. Each party shall bear its own counsel-fee and other litigation expenses connected with their appeal and this certiorari proceeding.

On certiorari previously granted, the Court of Appeals' opinion is vacated *only* insofar as it reverses the trial court's division of the parties' marital interest in the husband's retirement fund and authorizes the trial court's post-remand reconsideration of spousal property division as well as of support alimony; the trial court's decree is reversed *only* insofar as it deals with the spouses' marital interest in the husband's retirement fund; each party is ordered to bear its own appeal- and

**43.** *Chamberlin, supra* note 42 at 727; *Harmon v. Harmon,* Okl., 770 P.2d 1, 4 (1988); *Gardner v. Gardner,* Okl.App., 629 P.2d 1283, 1286–1288 (1981); *Carpenter, supra* note 21 at 653; *Phillips v. Phillips,* Okl., 556 P.2d 607, 610 (1976).

**44.** Implicit in the trial judge's award to the wife of one-half the enhanced value of her marital interest in the husband's retirement fund is a like award to the husband. At the April 15, 1992 hearing the trial judge stated:

"Additionally, the defendant is granted a judgment for an equitable—for her equitable portion of the ... plaintiff's retirement plan, which—and the equitable portion is that portion of the plan which was acquired—*or one half the portion of the plan which was acquired during marriage,* and the Court values that at $50,000." (Emphasis added.) Record 159, Tr. pp. 315–316.

certiorari-related litigation expenses and those for services of legal counsel; and the cause is remanded for further proceedings not inconsistent with today's pronouncement.

ALMA WILSON, C.J., KAUGER, V.C.J., and HODGES, LAVENDER, OPALA and SUMMERS, JJ., concur;

SIMMS, J., concurs in part and dissents in part;

HARGRAVE, J., concurs in result;

WATT, J., concurs in Parts I, II and IV and dissents from Part III.